THE PEOPLE OF THE STATE OF NEW YORK ex rel. SALIS-
BURY AXLE COMPANY, Appellant and Respondent, *v.*
THOMAS M. LYNCH et al., Constituting the State Tax
Commission, Respondents and Appellants.

(Argued March 15, 1932; decided June 1, 1932.)

*Ezra P. Prentice* and *Hamilton Le Viness* for relator, appellant and respondent. The corrected assessment was illegal, and not authorized by section 214-a of the Tax Law. (*People ex rel. Claire Belle Dresses, Inc.,* v. *State Tax Comm.,* 221 App. Div. 471; 248 N. Y. 568; *New York* v. *Jersawit,* 263 U. S. 493.) If section 214-a of the Tax Law authorizes the corrected assessment it violates the equal protection clause of the Constitution. (*Bass,*

Ltd., v. Tax Comm., 266 U. S. 271; Educational Films Corp. v. Ward, 282 U. S. 379; New York v. Jersawit, 263 U. S. 493; People ex rel. Alpha Portland Cement Co. v. Knapp, 230 N. Y. 48; People ex rel. Bass, Ratcliff & Gretton v. State Tax Comm., 232 N. Y. 42; International Paper Co. v. Massachusetts, 246 U. S. 135; Air-way Corp. v. Day, 266 U. S. 71; Hanover Fire Ins. Co. v. Harding, 272 U. S. 494; People ex rel. Griffith, Inc., v. Loughman, 249 N. Y. 369; Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389; Ohio Oil Co. v. Conway, 281 U. S. 146; Kentucky R. R. Tax Cases, 115 U. S. 321; Cotting v. Kansas City Stock Yards Co., 183 U. S. 79; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283; Hans Rees' Sons v. North Carolina, 283 U. S. 123; New York v. Latrobe, 279 U. S. 421.)   The assessment should be based on relator's capital stock.   (People ex rel. Terminal & Town Taxi Corp. v. Walsh, 202 App. Div. 651; Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50; People ex rel. Griffith, Inc., v. Loughman, 249 N. Y. 369; New York v. Latrobe, 279 U. S. 421; International Shoe Co. v. Shartel, 279 U. S. 429.)

John J. Bennett, Jr., Attorney-General (Wendell P. Brown of counsel), for defendants, respondents and appellants.   The statute does not violate the equal protection clause of the Fourteenth Amendment to the Federal Constitution. (Matter of French Co. v. State Tax Comm., 233 App. Div. 178; Educational Films Corp. v. Ward, 282 U. S. 379; New York Terminal Co. v. Gaus, 204 N. Y. 512; Carey v. Keith, 250 N. Y. 216; People ex rel. Claire Belle Dresses, Inc., v. State Tax Comm., 221 App. Div. 471; 248 N. Y. 568; Denman v. Slayton, 282 U. S. 514; Quaker City Cab Co. v. Pennsylvania, 277 U. S. 391; Merchants' Bank v. Pennsylvania, 167 U. S. 461; Ohio Oil Co. v. Conway, 281 U. S. 146; New York v. Latrobe, 279 U. S. 421; Hodge v. Muscatine County, 196 U. S. 276; Linsay & Phelps Co. v. Mullen, 176 U. S. 126;

*Sheldon* v. *Van Buskirk*, 2 N. Y. 473; *Hersee* v. *Porter*, 100 N. Y. 403; *Aikens* v. *Gray*, 170 N. Y. Supp. 736; *Bertholf* v. *O'Reilly*, 74 N. Y. 509; *Waters & Co.* v. *Gerard*, 189 N. Y. 302; *Lemieux* v. *Young*, 211 U. S. 489; *Kidd, Dater & Price Co.* v. *Musselman Grocery Co.*, 217 U. S. 461; *Klein* v. *Maravelas*, 219 N. Y. 383; *Illinois Central R. R. Co.* v. *Kentucky*, 218 U. S. 551; *Pierce Oil Corp.* v. *Hopkins*, 264 U. S. 137; *People ex rel. Bass, Ratcliff & Gretton* v. *State Tax Comm.*, 232 N. Y. 42; 266 U. S. 271; *People ex rel. Kohlman & Co.* v. *Law*, 239 N. Y. 346; *People ex rel. Lorimer Greenbaum Co.* v. *Gilchrist*, 212 App. Div. 733; *People ex rel. Beck Hazzard, Inc.*, v. *Gilchrist*, 220 App. Div. 362; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416.)

HUBBS, J.   This is a certiorari proceeding to review the determination of the State Tax Commission upon the relator's application for a revision and resettlement of its account for an annual franchise tax, under article 9-A of the Tax Law (Cons. Laws, ch. 60) for the tax year beginning November 1, 1920, measured by net income for the calendar year 1919.

The case comes to this court on cross-appeals from a final order of the Appellate Division, annulling the determination of, but remitting the matter to, the Tax Commission for a revision of the tax in accordance with the order.   The questions presented relate to the application and constitutionality of section 214-a of the Tax Law.

The relator is a Delaware corporation organized August 5, 1919.   Its business is manufacturing automobile axles which business it conducts at Jamestown, New York. It commenced business in New York as of July 1, 1919. It does business in no other State.   Prior to its incorporation, there had been in existence a corporation organized under the laws of New York, bearing the name Salisbury Axle Company, Inc., and engaged in the same business.   Prior to January 1, 1919, the New York cor-

poration had certain war contracts with the United States government under which it manufactured shells and automobile axles. Under instructions from the government, it had ceased substantially all operations under the war contracts prior to January 1, 1919. The contract for shells was canceled February 12, 1919, and the contract for axles was canceled June 19, 1919. About July 1, 1919, one Dana made a contract with Salisbury Axle Company, Inc., to purchase physical properties appraised at $1,500,000. The purchase included all of the real and personal property used by the New York corporation in its ordinary business of manufacturing axles. It did not include certain materials and equipment which it had used in the performance of the war contracts and which were valued at about $495,000. Neither did it include certain shares of the stock of other corporations owned by the New York corporation. The relator was thereupon incorporated and took over Dana's contract with the New York corporation. It commenced business as of July 1, 1919, and during the ensuing six months sustained a loss of $88,855.16. About June 24, 1920, the Delaware corporation made a franchise tax report under article 9-A of the Tax Law which contained an incorrect answer to question 24, which question and answer read: "Has this corporation since January 1, 1917, either directly or indirectly acquired by merger, consolidation or purchase, the major part of the assets or of the franchises of any other corporation or corporations?" "No."

Upon that report, the State Tax Commission assessed a franchise tax of $2,750 against the Delaware corporation, computed at the rate of one mill per dollar, upon $750,000, represented by 7,500 shares of preferred stock of the par value of $100 each, and one mill per dollar on $2,000,000, represented by 20,000 shares of common stock without par value, treating such common stock as having a par value of $100. This tax was paid without protest. Subsequently, the Tax Commission ascertained that the

answer to question 24 of the corporation return was erroneous and made a corrected assessment against the Delaware corporation of $10,546.79 for the year ended October 31, 1921, based on the income of both corporations for the calendar year 1919. Against this tax was credited the payment previously made and the balance was paid under protest by the Delaware corporation.

The New York corporation was not dissolved until September 24, 1921, when it paid a franchise tax of $660.60 based on its capital stock for the year ended October 31, 1921.

The relator contends that it should have been assessed on the basis of its capital stock instead of upon income and further contends that its non-par value stock for the purpose of fixing such tax should have been valued at $12.50 per share instead of $100 per share, which would reduce its tax to $1,000.

The State Tax Commission contends that the relator is taxable upon the entire net income of the New York and Delaware corporations as found by it in making the corrected assessment. The Appellate Division has decided that the Delaware corporation was properly taxable upon its own income plus the income of the New York corporation arising from the assets which it transferred to the Delaware corporation, thereby excluding from the income taxable to the Delaware corporation $65,444.21 received by the New York corporation through the use of assets employed by the New York company in government work and not transferred to the relator and excluding also the profit earned by the New York corporation through dividends on stocks held by it and not transferred to the relator.

Section 214-a of the Tax Law, added by Laws of 1918, chapter 292, as amended by Laws of 1919, chapter 628, the statute in force at all times mentioned herein, read as follows: " If any corporation taxable under this article

shall acquire either directly, indirectly or by merger or consolidation the major portion of the assets or the franchise of another corporation or of corporations exercising any franchise or franchises or doing any business in this state during any year, it shall include in its own next annual return, in addition to its own entire net income, so much of the entire net income of the corporation or corporations whose assets or franchises it acquired as shall not have been used or included in measuring a franchise tax to this state, and shall be taxed upon such combined entire net incomes for the year to ensue and as hereinbefore provided. The provisions for a minimum tax shall be applied only when under such provisions a tax will result in excess of the amount which would be produced by a tax on entire net income as hereinbefore provided and then in lieu thereof.

" This section shall be construed as having been in effect as of the date of the original enactment of article nine-a of the tax law, as added by chapter seven hundred and twenty-six of the laws of nineteen hundred and seventeen."

We believe that the corrected assessment, as made by the Tax Commission, was proper in amount if the statute in question is constitutional and is to be strictly construed. The relator contends that the statute is unconstitutional because violative of the equal protection clause of the Fourteenth Amendment to the Federal Constitution and if held to be constitutional should not be construed so as to tax a purchasing corporation on all income of the vendor corporation, during preceding calendar or fiscal years not previously used in measuring a franchise tax, but only on such part of the income of the vendor corporation as was derived from the assets transferred to the purchaser.

The total income of the vendor corporation which was included in the income of the Delaware corporation and used as a basis for computing the tax was $323,227.83, made up of the following items:

| | | |
|---|---:|---:|
| Net profit for work performed under government contracts prior to January 1, 1919.. | $65,444 | 21 |
| Net profit on sale of assets to Delaware corporation............................... | 40,554 | 01 |
| Net profit on closing in 1919 reserves for inventory accumulated prior to January 1, 1919............................... | 125,949 | 84 |
| Net profit by dividends on stocks......... | 1,664 | 79 |
| Net profit from ordinary operations....... | 90,596 | 21 |
| | $334,209 | 06 |
| Less adjustments for unallowable deductions | 10,981 | 23 |
| | $323,227 | 83 |

It is clear that if the statute is constitutional, and is to be strictly construed, the Tax Commission was right in including in the income of the Delaware corporation each and every item above enumerated because it is not contended that any of such income had previously been used or included in measuring a franchise tax to this State, and under the statute, the Delaware corporation was expressly liable for the tax upon its own entire net income and the entire net income of the corporation whose assets or franchise it acquired if they had not previously been used or included in measuring a franchise tax to this State.

The relator, the Delaware corporation, contends that the statute in question is unconstitutional because it is not a tax upon the transfer of assets but a tax upon the privilege of doing business, and by including the entire net income of the New York corporation, it is made to pay a larger tax than other corporations carrying on a business of the same size or nature under like circumstances; that it would depend upon the extent to which the vendor corporation had failed to pay franchise taxes in the previous years no matter how long previous.

The statute provides that the purchasing corporation shall include in its own next annual report, in addition to its own entire net income, so much of the entire net income of the vendor corporation as shall not have been used in measuring a franchise tax and shall be taxed upon such combined entire net income for the year to ensue. In this case the next annual report of the purchasing corporation was not due until on or before July 1st, 1920. (Tax Law, § 211.) It was, therefore, required to include in that report all income of the vendor which had not previously been used in measuring a tax. It neither included the income in its report nor did it inform the State of the purchase. Any delay in fixing the tax was due to the fault of the relator.

It is apparent that the statute in question prescribes the same basis for fixing the franchise tax upon every corporation coming within the provisions of that section. It is true that the amount of the tax will vary according to the amount of net income upon which the corporation from which the purchase is made has failed to pay a tax. But so would it vary if limited to income from the corporation's ordinary operations or to any other specific class of income. Neither can it be said that it places the purchasing corporation in a position where it may become liable to an excessive tax burden because the language of the statute is plain and the very requirement that it shall report the income of the corporation whose assets it has purchased upon which income a tax has not been paid is notice to the purchasing corporation that it must ascertain the amount thereof, and it must be presumed that the corporation acquires the assets with a willingness to assume the burden whatever it may be, or in making its contract has protected itself by security or otherwise against loss on account of such income not previously used as a basis for fixing a franchise tax.

No element of discrimination against foreign corporations is involved upon this appeal. The restriction placed

upon foreign corporations by the statute in question is no different than that placed upon domestic corporations.

The purpose of the section is plain, namely, to eliminate the possibility of tax evasion through the transfer of the assets of one corporation to another by placing the burden upon the purchasing corporation to pay, or provide for the payment of, the tax due or which, but for the sale, would become due from the vendor corporation. The purchase of assets by a new corporation is one of the privileges of doing business in the State and to say it may not be prevented from purchasing assets in such a manner as to permit tax evasion would hardly seem reasonable.

The difficulty in this case is that the vendor did not sell its entire assets and was not immediately dissolved. It did sell its going business, its war contracts having been canceled and that branch of its business having been terminated. The relator argues that the statute provides an arbitrary measure for fixing the tax upon the vendee; also that a purchaser acquiring fifty-one per cent of the assets would be required to pay a tax equal to that which would be required of another corporation purchasing the entire business. As the statute has been drawn, that result would follow. If, to be constitutional, a statute of this kind should specify liability on the part of the vendee only upon a sale of the entire assets, ninety-nine per cent could be transferred and the balance which might be of negligible value could be retained, thus relieving the vendee without affording protection to the State.

Though the statute may, in the case suggested by the relator, seem somewhat burdensome upon the vendee corporation, it is not so in fact, because of the opportunity afforded to the vendee corporation, upon the transfer of assets, to protect itself, whereas, if the statute provided a less strict rule upon a sale of a large proportion of the assets, the interests of the public would be jeop-

ardized with benefit to no one except the parties to the transfer.

In this case, the business originally conducted by the New York corporation was not discontinued. For the privilege of carrying on that business, a tax is imposed by the statute measured by the income of the business for the preceding year. A partial sale of assets having been made and both corporations continuing to exist, if loss in taxation is not to result, some practical method of determining which corporation succeeds to the business of the vendor must be adopted. What more practical understandable method could be devised than to provide that the tax liability for the particular business shall follow the major assets? That method this statute provides and the vendor corporation for the privilege of continuing its corporate existence is left liable for the minimum tax imposed upon any corporation not having profits upon which to base a tax.

Moreover, to impose upon the tax authorities the burden of determining in a given case what portion of the income of a going concern is derived from certain of its assets and what portion is derived from other assets, would not be practical. The Appellate Division, in the instant case, has exempted the vendee from tax liability on account of certain specific income which it has been able to say was derived from specific assets not transferred, but the rule which it has adopted would be difficult of enforcement in most instances of partial transfers.

No need for construction of the statute is shown. The language used is clear and unequivocal. If held to be constitutional, it should not be given a meaning not reasonably to be deduced from its wording. If the Legislature had intended to say that the purchasing corporation should be liable for unpaid tax upon the income derived from that portion of the assets transferred, it easily could and presumably would have so stated. It has not done so and the court should not by construction

give it a meaning neither intended nor warranted by the language used.

We have reached the conclusion that the statute does not violate the equal protection clause of the Fourteenth Amendment to the Federal Constitution.

The cases cited by the relator which deal with special statutes prescribing conditions under which foreign corporations may do business within a State are not closely in point because such statutes are in a sense discriminatory. Statutes of that nature were under consideration in *International Paper Co. v. Massachusetts* (246 U. S. 135); *Air-Way Electric Appliance Corp. v. Day* (266 U. S. 71); *People ex rel. Alpha Portland Cement Co. v. Knapp* (230 N. Y. 48) and *Hanover Fire Ins. Co. v. Harding* (272 U. S. 494).

In *Quaker City Cab Co. v. Pennsylvania* (277 U. S. 389) a statute was involved which laid a tax upon receipts of corporations engaged in a business in which the receipts of natural persons engaged in the same kind of business were not taxed. In *Ohio Oil Co. v. Conway* (281 U. S. 146, 159) the court said: " The States, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that amendment imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation."

It said further: " With all this freedom of action, there is a point beyond which the State cannot go without violating the equal protection clause. The State may classify broadly the subjects of taxation, but in doing so it must proceed upon a rational basis. The State is not at liberty to resort to a classification that is palpably arbitrary. The rule is generally stated to be that the classification ' must rest upon some ground of difference having a fair and substantial relation to the object of the legisla-

tion, so that all persons similarly circumstanced shall be treated alike' " (p. 160).

The classification applicable to the case at bar is as to corporations which purchase the assets of other corporations and continue their business. The object of the statute is taxation and the section prescribes a classification which has a fair and substantial relation to that object. Moreover, all corporations, domestic and foreign, which fall within the classification are treated alike. Whatever inequality of burden results, comes from the election of certain taxpayers to avail themselves of privileges offered to all. (*Merchants' & Manufacturers' Bank* v. *Pennsylvania*, 167 U. S. 461.) As was said in *New York* v. *Latrobe* (279 U. S. 421, 427): "Although permissible, a franchise tax need not be based solely on the amount of business done or property owned within the State. It may be rested on the nature of the business. * * * or the particular form in which it is carried on, * * * so long as it bears some real and reasonable relation to the privilege granted or to the protection of the interests of the State."

It seems clear that this statute bears a real and reasonable relation to the privilege granted, affords a protection to the State, is not unnecessarily burdensome, contains no element of discrimination against a foreign corporation and is not violative of the amendment to the Federal Constitution. It further appears that it is clear and unequivocal and requires no construction. (*People ex rel. Bass, Ratcliff & Gretton* v. *State Tax Commission*, 232 N. Y. 42; affd., 266 U. S. 271.)

The determination of the Tax Commission, as shown by its corrected assessment, follows the statute and results in a tax correct in amount. It is unnecessary to consider the question raised as to the valuation of the no par value stock of the relator, since a tax based upon the value of the capital stock of a corporation is prescribed only as a minimum. (§ 214, subd. 8.)

The order of the Appellate Division should be reversed and the determination of the State Tax Commission affirmed, with costs payable to the State Tax Commission in the Appellate Division and in this court.

POUND, Ch. J., CRANE and O'BRIEN, JJ., concur; LEHMAN, J., dissents and votes to modify the determination of the State Tax Commission by deducting from the income of the relator the net profit on the sale of assets to it; KELLOGG, J., not sitting.

Ordered accordingly.