The People of the State of New York ex rel. Best &
Co., Inc., Appellant, *v.* Mark Graves et al., Con-
stituting the State Tax Commission, Respondents.

(Argued October 2, 1934; decided November 20, 1934.)

*Lorenz Reich, Jr.*, and *M. James Spitzer* for appellant.

*John J. Bennett, Jr., Attorney-General (Wendell P. Brown* of counsel), for respondents.

LEHMAN, J. The relator was incorporated on July 29th, 1924. It acquired the assets and franchises of Best & Co., Inc., hereinafter referred to as the " old company." It assumed the same name as the old company which was thereupon dissolved.

" For the privilege of exercising its franchise in this state in a corporate or organized capacity every domestic corporation * * * shall annually pay in advance for the year beginning November 1st next succeeding the first day of July in each and every year an annual franchise tax, to be computed * * * upon the basis of its entire net income for its fiscal * * * year next preceding." (Tax Law, § 209; Cons. Laws, ch. 60.) Every corporation subject to the tax is required to file a report on or before July 1st of its net income for its next preceding fiscal year. (§ 211.) The old company, before July 1st, 1924, filed, as it was required to do, a report showing a net income of over $700,000 during its next preceding fiscal year which ended on January 31st, 1924. A franchise tax computed upon the basis of that income was assessed against it for the privilege of doing business for the year beginning November 1st, 1924. The old company was dissolved prior to that date. It neither asked nor acquired the privilege of exercising any franchise during that year, and no tax could be imposed upon

it. For that reason the State Tax Commission annulled the tax assessed against the old company, though it failed to take such action for several years, and until after the relator complied under protest with a demand of the Commission for the filing of a report of the income of both the old and the new corporations for the period from February 1st, 1923, to January 31st, 1925. In January, 1933, the relator received notice that a franchise tax was assessed against it for the year beginning November 1st, 1924, based on the net income of the old corporation during the fiscal year ending January 31st, 1924. Subsequently that assessment was modified but the modification is not material here. In the proceedings here under review the relator seeks the annulment of that assessment.

Since the relator was organized after July 1st, 1924, the statute then in force did not require the relator to file any return or report until July 1st, 1925, nor was it required to pay in advance any tax for the privilege of exercising its franchise during the year beginning November 1st, 1924. The statute was amended in 1925. Then the statute required that a business corporation which acquired " either directly, indirectly or by merger or consolidation the major portion of the actively employed assets or the franchises of another corporation or of corporations exercising any franchise or doing any business in this state   *   *   *   shall on or before the first day of July, or *within thirty days* after such acquisition, merger· or consolidation, if consummated between the thirtieth day of June and the first day of November, file a report and include therein a statement showing its own and the consolidated entire net income of all such corporations for preceding calendar or fiscal years to the extent that all such income has not been used or included in measuring a franchise tax to this state. It shall, in any event, be liable for and pay all taxes that would have been due and payable by the corporation, or corporations, on or before the first day of January next succeeding had the

corporation or corporations whose assets or franchises were acquired, or which were merged or consolidated, continued in business and as though there had been no interruption or change of the business thereof nor discontinuance of the privilege of exercising a franchise." (§ 214-a, as amd. by Laws 1925, ch. 323.) In express terms the Legislature declared that this section as amended should be given retroactive effect. The omission of that declaration in a recodification of the statute made several years later by the Legislature does not change the force of the original declaration. The intention of the Legislature to make the amendment retroactive stands unquestioned and that intention must be given effect unless it transcends the constitutional powers of the Legislature.

" A statute purporting to lay a tax may be so arbitrary and capricious that its enforcement would amount to deprivation of property without due process of law." (*Blodgett* v. *Holden*, 275 U. S. 142, 147, citing *Nichols* v. *Coolidge*, 274 U. S. 531.) An act of the Legislature attempting to revoke an exemption from taxation in respect to past transactions may be a denial of due process. (*Matter of Pell*, 171 N. Y. 48; *City Bank Farmers' Trust Co.* v. *N. Y. C. R. R. Co.*, 253 N. Y. 49.) (Cf. *Blodgett* v. *Holden*, 275 U. S. 142; 276 U. S. 594; *Untermyer* v. *Anderson*, 276 U. S. 440.) Nevertheless " a tax is not necessarily and certainly arbitrary and therefore invalid because retroactively applied, and taxing acts having retroactive features have been upheld in view of the particular circumstances disclosed and considered by the court." (Citing cases.) (*Milliken* v. *United States*, 283 U. S. 15, 21.) In his dissenting opinion in *Untermyer* v. *Anderson* (*supra*) Mr. Justice BRANDEIS has analyzed such cases. They leave no doubt that the rule is that no limitation upon the legislative power to impose a tax excludes the power to give retroactive effect to a tax law. Legislative power does not, however, include the power to take private property arbitrarily, whether through exer-

cise of the power of taxation or otherwise. Thus only a retroactive application of a tax law which would result in the taking of property arbitrarily is beyond the power of any Legislature. In challenging a tax it does not suffice to say that it is imposed because of transactions or conditions which antedate the statute. It is necessary to consider the nature of the tax and of these acts or conditions. (*Milliken* v. *United States, supra.*)

The relator in acquiring the assets, franchises and the right to use the name of the old company, knew that as a result the old company would be compelled to discontinue its business and to comply with the statutory requirements for its dissolution. The general purpose of the Tax Law is clear. Corporations must pay for the privilege of doing business in corporate form by a tax based on the income from such business. Since a tax based on income cannot be assessed until the income is ascertained, the statute requires the filing on or before a fixed date of a report of the net income enjoyed during the preceding fiscal year, and then imposes a tax, payable in advance, based upon such income, for the privilege of exercising the franchise during the following tax year. Thus the full income of each corporation will eventually form the basis of the tax assessed against it in succeeding years, so long as it continues to do business. By discontinuing its business and transferring or abandoning its franchise, it can escape payment of any franchise tax based upon its income during the preceding fiscal year, though, as in this case, those earnings may have been large. The State may impose a franchise tax for the privilege of exercising a franchise to conduct a business within the State. The interests of the public would be jeopardized and inequality would result if the tax could be evaded by transfer of assets or franchises by one corporation to another, which can continue to use them in a business in this State without paying the tax which would otherwise be due from the selling corporation.

We do not say that the old corporation and the relator, which purchased its assets and franchises and continued its business under the same corporate name, conspired to evade the tax. Whatever may have been the motive for the transfer, it is indisputably true that unless either the old corporation or the relator pays a franchise tax measured by the income earned by the old corporation, the result will be the evasion of a tax which but for the transfer would have been payable to the State. The Legislature was called upon to devise a practical method of preventing such evasion. It has done so by providing that the tax liability for the particular business shall follow the major assets. Such provision is within the constitutional powers of the Legislature. (*People ex rel. Salisbury Axle Co.* v. *Lynch*, 259 N. Y. 228, 238.)

In that case section 214-a of the Tax Law before the amendment of 1925 was attacked. We did not consider the effect of that amendment. Even before the amendment the section was intended to provide that, upon a transfer to a corporation of the major part of the assets of another corporation, " the tax liability for the particular business shall follow the major assets." It required every corporation, acquiring the major portion of the actively employed assets or franchises of another corporation, *during any year* to " include in its own next annual return, in addition to its own entire net income, so much of the entire net income of the corporation or corporations whose assets or franchises it acquired as shall not have been used or included in measuring a franchise tax to this State, and shall be taxed upon such combined entire net incomes for the year to ensue and as hereinbefore provided." That section by its terms applied to transfer " during any year " and was not intended to exclude transfer made between July 1st and November 1st, though it failed to require any return to be filed by the vendee of the net income of the vendor corporation before the vendee filed its next annual report, and thus in such

case the income of the vendor corporation could not be included in the franchise tax of the vendee until more than a year after the transfer. The amendment was intended to cure this administrative defect.

A tax law which retroactively cures an administrative defect is not arbitrary and unconstitutional. (*Graham & Foster* v. *Goodcell*, 282 U. S. 409.) Even if through some error in draftsmanship this relator could have escaped the liability which the Legislature evidently intended to impose, a claim that retroactive cure of patent error was inequitable and arbitrary would be without substance. Here, however, the relator could not escape liability, even if the error had not been cured by the amendment. True, without such amendment, it would not have been subject to a franchise tax for the year beginning November 1st, 1924, but its tax in the year 1925 would then have included the amount which has been assessed against it for the year beginning in 1924. (*People ex rel. Salisbury Axle Co.* v. *Lynch, supra.*)

It is unnecessary in this opinion to discuss the claims of the relator that in other respects also the tax is inequitable and that when the Tax Commission assessed the 1925 tax against the relator it exhausted its powers. We find that the tax determination is not vulnerable on such grounds.

The order should be affirmed, with costs.

POUND, Ch. J., CRANE, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Order affirmed.