THERESA O'NEILL, Appellant, *v.* LOLA REALTY CORPORATION and Others, Respondents.

Second Department, May 4, 1942.

*William McKelvey*, for the appellant.

*D. William Leider* [*Harold I. Cammer* and *Morris Permut* with him on the brief], for the respondents.

HAGARTY, J. This is an action to reform a mortgage and to foreclose it, as reformed, as a lien superior to the interests of defendants in realty derived from instruments subsequently recorded. All the allegations of the complaint, including default by the mortgagor, are admitted in the joint answer of defendants and the complaint may, therefore, be deemed an agreed statement setting forth the facts which follow.

On March 25, 1936, one Calderaro executed and delivered to plaintiff a bond secured by a mortgage in the sum of $4,000. The mortgage incorrectly described the property which was the subject of the lien. The northerly boundary of the property was described as so many feet south of " 23rd Avenue, formerly Woolsey Avenue," and the southerly boundary was described as " parallel with 23rd Avenue." The correct description is " 24th Avenue, formerly Woolsey Avenue." The description in the mortgage, so far as it refers to Twenty-third avenue, places the property in block 173 of the land map of Queens county. The parcel is actually located in block 155 of that land map.

The same incorrect description appeared in the deed to Calderaro delivered on May 8, 1935. The deed, nevertheless, was properly indexed under block 155 when it was recorded on November 14, 1935. However, when the mortgage was delivered to the register for recording, it was indexed under block 173. This was done despite the fact that, on the back of the mortgage, there appeared a notation that the land affected by the instrument was in block 155. This notation was erased by the register, or by one of his employees, and " Block 173 " inserted instead. The mortgage was returned to plaintiff after its erroneous recording and she retained it without noticing the change.

Plaintiff argues that the register was at fault in recording the mortgage under block 173, even though the erroneous description placed the property in that block, because Woolsey avenue was also referred to in the description and it was well known that Woolsey avenue was Twenty-fourth avenue, and in substituting the erroneous block number for the correct one on the back of the instrument. It is clear, however, that the mistake was induced, in part at least, by the misdescription.

An unfortunate sequence of conveyances ensued. Calderaro conveyed the mortgaged premises to one Frank Dlouhy by deed bearing date the 9th of December, 1937, and recorded the following day, containing the true description of the property. The deed contained no reference to plaintiff's mortgage. Dlouhy paid a valuable consideration and had no knowledge of the existence of the mortgage until he had conveyed to his successor, defendant Lola Realty Corporation, hereinafter referred to as Lola, by deed bearing date the 1st of March, 1938, and recorded on the 5th of April, 1938. Lola was a *bona fide* purchaser for value and first acquired knowledge of the existence of the mortgage on the 29th of November, 1938.

Lola divided the premises into eight parcels and built a house on each parcel. It sold two of the parcels to defendants Person and Contarino before it acquired knowledge of the existence of the mortgage. After it had acquired such knowledge, it conveyed the remaining six parcels without disclosure to the defendant purchasers, all of whom paid a valuable consideration and had no knowledge of the existence of the mortgage, with the exception of Paraskevoula Calathas and Costas Calathas, hereinafter jointly referred to as Calathas, who purchased one parcel. Calathas, prior to taking the deed from Lola which bore date the 16th of December, 1938, and was recorded on that day, knew of the existence of the mortgage. The remaining defendants are holders in good faith and for value of mortgages on the other parcels.

Finally, on March 18, 1940, the plaintiff called to the attention of the register the fact that her mortgage had been incorrectly indexed under block 173 and, on that day, the register reindexed the mortgage under block 155 and corrected the back of it accordingly.

In contending that a recorded mortgage is constructive notice to subsequent purchasers and incumbrancers, even if not properly block indexed, and that a listing under an alphabetical index is sufficient notice, plaintiff relies primarily upon the authority of *Mutual Life Ins. Co. of N. Y.* v. *Dake* (87 N. Y. 257). There the claimed mistake was wholly that of the clerk who transcribed the

mortgage in the proper record book but did not index it. It was held that the mortgage was properly recorded. The conclusion was reached, after examination of the then existent pertinent statutes, that the index was not required by law and so did not constitute part of the record but was merely a guide for the convenience of searchers. The opinion concludes: " It may be that the index, both for convenience and safety, should be made a part of the record; but until it is so made by the Legislature, we can but pronounce the law as it is."

Section 316 of the Real Property Law, as amended by chapter 582 of the Laws of 1924, with respect to the duty of a recording officer to maintain an alphabetical index, expressly provides that " Such indexes shall form a part of the record of each instrument hereafter recorded."

Where a mortgagee delivers an instrument for recording and, through no fault of his own, it is not placed on record by the recording officer, the instrument, nevertheless, is considered recorded from the time of such delivery. (Real Prop. Law, § 317; *Mutual Life Ins. Co. of N. Y.* v. *Dake, supra,* p. 264; *Putnam* v. *Stewart,* 97 N. Y. 411, 417.) This is because a mortgagee is not liable for an omission of the clerk to record. A mortgagee is responsible, however, for a false record, particularly where, as here, the description in the instrument which the mortgagee delivered for recording induced the mistake. (*President, etc., of Manhattan Co.* v. *Laimbeer,* 108 N. Y. 578, 591.) It follows that the failure properly to record the instrument renders it void as against subsequent purchasers in good faith and for a valuable consideration whose conveyance or contract is first duly recorded. (Real Prop. Law, § 291; *Page* v. *Waring,* 76 N. Y. 463, 469; *Howells* v. *Hettrick,* 13 App. Div. 366, 368; affd., 160 N. Y. 308, 310.)

Plaintiff urges that inasmuch as section 316 of the Real Property Law provides only for the maintenance of an alphabetical index, a listing of this mortgage thereunder would be sufficient recording. The pertinent provisions of the Real Property Law must be read *in pari materia* with section 259-bb of the County Law, entitled " Indexing, reindexing and recording of instruments affecting real estate in the county of Queens." Subdivision 17 thereof provides that an instrument shall be indexed in the proper book of block indices under the block number. Subdivision 20 provides that entries made in such indices shall, for the purpose of notice, be deemed and taken to be a part of the record and notice to subsequent purchasers to the same extent and with like effect as the recording of such instruments in the office of such register or clerk now is or may be notice. Subdivision 21 treats the precise situation under

consideration. It provides that in cases where any instrument shall have been recorded with an erroneous block designation, the register, upon the presentation of proper proof, shall enter such instrument in the proper index under the proper block number. The register shall make note of such entry and the date thereof in every place in which the instrument may have been erroneously indexed, and upon the record of the instrument, " and the record of such instrument .shall be constructive notice as to the property in any block not duly designated at the time of such recording *only from the time when the same shall be properly indexed.*" (Emphasis supplied.)

In the light of this controlling language, it is clear that as to the owners and mortgagees of all the parcels, save that of Calathas, their title is unaffected by the lien of the mortgage in that they are purchasers in good faith and for a valuable consideration.

A further contention of plaintiff is that the title of Calathas is subordinate to the lien of the mortgage because Calathas took with knowledge of its existence at a time when the grantor, Lola, was also possessed of such knowledge. By reason of taking with knowledge, Calathas became vested with their grantor's title, as assignees. (*Dingley* v. *Bon*, 130 N. Y. 607, 613; *Hood* v. *Webster*, 271 id. 57.)

When it is held, as it must be, that Dlouhy took title superior to the mortgage, he must necessarily have been enabled to convey such title. If he could not have conveyed title superior to the mortgage, then he would not have had such title himself. In consequence, the element of knowledge on the part of those who took from Dlouhy is immaterial. This was the holding in *Wood* v. *Chapin* (13 N. Y. 509, 518), where it was stated: " If Smith acquired a good title against Leland and Skinner by virtue of the recording acts, as I have shown he did, the plaintiff would be entitled to protection, though he had purchased with full notice of the prior deed. * * * Smith's title being perfect against Leland and Skinner, the plaintiff, being clothed with that title, can hold the land against them." In *Jospe* v. *Danis* (138 App. Div. 544, 546, 547), BURR, J., for this court, quoted the rule, on authority, as follows: " A purchaser, with notice himself, from a person who bought without notice, may protect himself under the first purchaser. The reason is, to prevent a stagnation of property, and because the first purchaser, being entitled to hold and enjoy, must be equally entitled to sell."

My conclusion, therefore, is that Lola obtained superior title because it succeeded to the title of Dlouhy and also because it was an innocent purchaser and could, therefore, convey superior title

even though it thereafter acquired knowledge.   In turn, Calathas took that superior title from Lola, despite knowledge.

The consolidated order and judgment should be affirmed, without costs.

LAZANSKY, P. J., JOHNSTON, ADEL and CLOSE, JJ., concur.

Consolidated order and judgment denying motion of plaintiff for judgment on the pleadings and granting defendants' cross-motion for judgment dismissing the second amended complaint on the merits affirmed, without costs.