OPINION OF THE COURT
Joan B. Lefkowitz, J.
Does a prior recorded mortgage that is improperly indexed by name of the mortgagor lose priority to a subsequent mortgage properly recorded and indexed where the subsequent mortgagee lacks actual knowledge of the prior mortgage *9 at the time of making the subsequent one? This interesting issue is presented herein by the subsequent mortgagee’s motion addressed to the merits of the claim of the first mortgage.
In an action to foreclose a mortgage defendant Chemical Bank moves for an order dismissing the complaint as to it and, further, for declaratory relief. A nonparty moves by counsel for an order authorizing submission of an affirmation in opposition as amicus curiae.
In September 1983 the mortgagor, Susan Levine-Rodriguez, executed a mortgage to Intercounty Mortgagee Corp. in the sum of $68,700. Intercounty assigned the mortgage to plaintiff. The mortgage was recorded in Rockland County on September 23, 1983. The deed into Levine-Rodriguez had no hyphen and was indexed under the letter "R”. However, the mortgage used the hyphen and was indexed by the County Clerk under the letter "L”.
On May 1, 1989 Mr. and Mrs. Levine-Rodriguez executed a mortgage in favor of Chemical Bank in the sum of $70,000. A title search located a prior mortgage of $20,000 dated April 3, 1986 under the name Rodriguez. The mortgagors’ attorney certified that Chemical Bank would have second lien on the property when the mortgage was recorded. The title search did not pick up the plaintiff’s mortgage as it was indexed under "L” and not "R”. Since Rockland County uses an alphabetical mortgagor-mortgagee filing system, Chemical Bank could properly rely on the information to it at the time of closing. Chemical Bank’s mortgage was recorded on October 22, 1990.

Priority of Mortgages

For Chemical Bank to prevail herein it must establish that it was a subsequent mortgagee without notice of the rights of the plaintiff. (Metrobank for Sav. v Bergman, NYLJ, May 15, 1991, at 25, col 2 [Sup Ct, Rockland County].) Usually priority of mortgage is determined by date of recordation. (Real Property Law § 291.) A mortgage is deemed recorded at the time of delivery to the recording officer (Real Property Law § 317). An index of mortgagors and mortgagees forms part of the record of the mortgage recorded (Real Property Law § 316).
Prior to the amendment of section 316 of the Real Property Law in 1924 (L 1924, ch 582) indexes were not part of the record and a mistake regarding the index did not affect the priority of a mortgage. (Mutual Life Ins. Co. v Dake, 87 NY *10 257 [1881].) The "mistake” in Dake was the total failure of the Clerk to index the mortgage. The relevant statutes at the time required the Clerk to maintain an index but there was no statutory requirement that the index form part of the record. In an action to foreclose a mortgage the Court of Appeals held that the first mortgage delivered to the Clerk’s office for recording had priority over a subsequent mortgage that was recorded before the first mortgage was properly indexed. The Court of Appeals viewed indexing as a convenience for title searches. However, it did observe (87 NY, at 264-265): "It may be that the index, both for convenience and safety, should be made part of the record; but until it is so made by the legislature, we can but pronounce the law as it is.”
In the absence of a statute mandating maintenance of an index, no such requirement exists on government officials. (Matter of D’Alessandro v Unemployment Ins. Appeal Bd., 56 AD2d 762 [1st Dept 1977].) However, such a duty does exist in the real property field. What is indexing with regard to real property instruments? One learned treatise has said (66 Am Jur 2d, Records and Recording Laws, § 89, at 395): "An index is one of the facilities to be used in making a search for a record; its object is to point out the book and page in which a particular record may be found, and its utility and practical necessity are unquestioned.” Another authority has said (76 CJS, Records, § 16 [a], at 121): "If there is no index of an instrument in the book, one who has searched is entitled to assume that no such instrument is on file or record.”
There is a sharp conflict in the cases in other jurisdictions as to whether the index is part of the record for recordation purposes (66 Am Jur 2d, op. cit, §§ 90-92, 130; 76 CJS, op. cit., § 16 [b]; Annotation, Records of Title — Improper Indexing, 63 ALR 1057 [1929]; 2 Merrill, Notice §§ 1066-1072 [1952]; Cross, The Record "Chain of Title” Hypocrisy, 57 Colum L Rev 787 [1957]; Osborne, Mortgages § 203 [2d 1970]; Thompson, Real Property § 4306 [1963 ed]; 4 American Law of Property § 17.31). Professor Merrill, writing in his 1952 treatise, found the majority’s view, to which New York subscribed, to be that the recorder’s mistakes on indexing do not defeat constructive notice of the record (2 Merrill, op. cit., § 1070), whereas a substantial minority view concluded otherwise (id., § 1070). Other secondary authority made similar observations. (Annotation, op. cit., 63 ALR 1057, §§ II, III; 66 Am Jur 2d, op. cit., §§ 89, 90; Cross, op. cit., 57 Colum L Rev, at 790-791, 797.) Professor Osborne, in the most recent statement on the sub *11 ject, appears to find that a majority of jurisdictions place the burden on the party who presents the instrument for recordation to see to it that it is properly indexed or else suffer the consequences. (Osborne, Mortgages, §203 [2d ed 1970]; see, Hochstein v Romero, 219 Cal App 3d 447, 268 Cal Rptr 202 [4th Dist 1990] [where document improperly indexed and not locatable by a proper search, mere recordation is insufficient to charge a subsequent purchaser with notice].)
Many jurisdictions place the burden on the grantee to insure that full recordation occurs properly on the theory that where one of two innocent persons must suffer a loss the onus should be on the one who was in the best position to correct the situation. (66 Am Jur 2d, op. cit., § 130.) In the cited treatise it is said (at 421): "A cogent reason underlying the rule which places upon the grantee of a deed or other instrument the responsibility for seeing that the record made of the instrument is accurate is that one who files a paper for recording] always has it in his power to examine the records and satisfy himself that his paper has been duly and accurately recorded, while it is impossible for a prospective purchaser or creditor to anticipate and inquire about and ascertain the innumerable forms which the negligence or mistakes of the [recording] officer may assume.”
Professor Merrill, in turn, postulates similar arguments in discussing which view (majority or minority in 1952) is better. (2 Merrill, Notice, § 1071 [1952].) He boils it down to whose ox is being gored because the Recording Acts are designed to protect both prior and subsequent encumbrancers and concludes that it is best for the Legislatures to decide among competing interests which are too "nicely balanced” since, whichever rule is adopted, "some innocent people are going to be hurt” (id., at 702). Professor Cross in his law review article on the subject reached a similar conclusion but specifically called for statutes that make proper indexing a part of the record, the burden of which is on the party filing the document (Cross, op. cit., 57 Colum L Rev, at 799). He also called for mandatory tract indexing, such as block and lot, which exists in certain counties in New York (Andy Assocs. v Bankers Trust Co., 49 NY2d 13 [1979]) but not in Rockland County.
Mutual Life Ins. Co. v Dake (87 NY 257, supra) placed New York among those States which hold that the filer of the mortgage instrument need not stand by or later investigate to see if the document was properly recorded, since delivery of the document to the recorder is itself sufficient. (Antoneli v *12 City of Mt. Vernon, 234 NYS2d 550 [Sup Ct, Westchester County 1962]; Real Property Law § 317.) Prior thereto, in Frost v Beekman (1 Johns Ch 288 [1814], revd on other grounds 18 Johns 544 [Ct of Errors 1820]), it was held that a subsequent purchaser "is not bound to attend to the correctness of the registry. It is the business of the mortgagee, and if a mistake occurs to his prejudice, the consequences of it lie between him and clerk, and not between him and the bona fide purchaser” (1 Johns Ch, at 298).
As will be seen from the following discussion, New York law on the issue presented is somewhat tortured. In 1924 section 316 of the Real Property Law, which prior thereto back to the time antecedent to Dake (supra), required the recording officer to maintain an alphabetical index, was amended (L 1924, ch 582) to add the following language as it appears today: "Such indexes shall form a part of the record of each instrument hereafter recorded.” (See, 4A Warren’s Weed, NY Real Property, Recording, § 3.06.)
In Chittick v Thompson Hill Dev. Corp. (230 App Div 410 [2d Dept 1930], affd 259 NY 233 [1932]) the court overlooked the 1924 amendment and applied the rule that priority is not affected by a mistake in indexing. In denying reargument on the ground of loches the court acknowledged the existence of the amendment and modified its decision, but not its result (232 App Div 818 [2d Dept 1931]).
Thereafter, in O’Neill v Lola Realty Corp. (264 App Div 60, 63 [2d Dept 1942]) it was held that a mistake in indexing, caused by the mortgagee, rendered the mortgage void as against subsequent purchasers for value in good faith.
In Baccari v De Santi (70 AD2d 198 [2d Dept 1979]) a prior mortgage was improperly indexed in the wrong municipality. The property was later sold and a title search failed to disclose the second mortgage. The sale was financed by the purchaser by way of proceeds loaned by a creditor to whom a new mortgage was given and was recorded. The prior mortgagee sued to declare the rights of the parties and to impose liability on the County Clerk’s office. The Appellate Division rejected the argument that an improperly indexed mortgage still constitutes constructive notice (as previously held in Mutual Life Ins. Co. v Dake, 87 NY 257, supra), at least in cases of alleged Clerk misfeasance as distinguished from nonfeasance (such as failure to record) (70 AD2d, at 202) and relied on Frost v Beekman (1 Johns Ch 288, supra) as author *13 ity. Parenthetically, it should be noted that all prior authorities of primary importance were argued by the defendants (see, defendants-appellants’ brief, pt III, at 9-12, Record on Appeal No. 10940, 2d Dept, as maintained by the White Plains Sup Ct Library).
The court observed that, as here, the prior mortgage was recorded but not properly indexed and, therefore, the recording did not constitute constructive notice of the prior mortgage. As to actual notice or the lack thereof, the court noted that the complaint did not frame the issue but, in any event, summary judgment was not proper at that time because the attorney who handled the prior mortgage transaction also participated at the closing on the sale by the mortgagor to the current mortgagor and may have mentioned the improperly indexed mortgage at the closing. That is, the court believed that a question of fact existed on the issue of actual notice, which affected priority of the mortgages and potential liability of the County Clerk.
It is noteworthy that the court in Baccari (supra) uneqivocally held the County Clerk liable for misfeasance in misindexing the prior mortgage if it was to be established that the subsequent mortgagee lacked actual knowledge of the existence of the prior mortgage (70 AD2d, at 203).
Baccari (supra) was decided in September 1979. Eight months earlier a decision was rendered in Camfield v Luther Forest Corp. (98 Misc 2d 903 [Sup Ct, Saratoga County 1979]). The full opinion may be found in Record on Appeal No. 3674, Third Department, pages 10a-23a, as maintained by the Supreme Court Library in White Plains. While truly an adverse possession case, the court also dealt with the question of priority of deeds where an earlier deed was not properly indexed. Justice Ford referred to a document in the Bill Jacket to the 1924 amendment to section 316 of the Real Property Law, the holdings in Chittick v Thompson Hill Dev. Corp. (230 App Div 410, 232 App Div 818, supra) concluded Mutual Life Ins. Co. v Dake (87 NY 257, supra) was no longer controlling, held that the index was a part of the record and, where, as there, a mistake was made in indexing the prior deed (it simply was not indexed until 48 years after it was recorded), the prior deed did not constitute notice (98 Misc 2d, at 905-906; see also, Real Property Law § 316-a [8] [once error in indexing is corrected the instrument shall constitute constructive notice "only from the time when the same shall be properly indexed”]). In the unpublished portion of the opinion *14 the court held that the evidence established title by adverse possession in the defendant.
The Appellate Division, Third Department, affirmed nisi prius, holding that its determination on adverse possession was correct. (Camfield v Luther Forest Corp., 75 AD2d 671 [3d Dept 1980].) However, the appellate court in dicta addressed the recording question and, in apparent ignorance of Baccari (supra, which was not called to its attention in the briefs) and in contravention of seemingly direct precedent in point by way of analogy (Greene v Foremost Locations, 7 AD2d 780 [3d Dept 1958] [failure to index restrictive covenants in deed of common grantor means that said deed is not constructive notice]), held that the first recorded deed retained priority even though indexes are part of the record (75 AD2d, at 672). The court relied on Bake (supra), that the first grantee need not see to it that the deed was properly recorded, mere delivery to the recording officer being sufficient.
Interestingly, the respondent had argued (defendant-respondent’s brief, pt I, at 2-11, Record on Appeal No. 3674) that the trial court’s reliance on the Bill Jacket contents to the 1924 amendment to section 316 of the Real Property Law was misplaced because the document referred to therein was really ambiguous, not authored by a sponsor and did not discuss the significance or effect of the proposed amendment to make indexes part of the record. Respondent’s counsel opined that the purpose behind the amendment was to require recording officers to be "more careful” regarding indexing. (Respondent’s brief, supra, at 9.) These arguments were not discussed by the appeals court. However, Camfield (supra) may be reconciled with Baccari (supra) as holding that the first recorded document constitutes constructive notice where the recording officer is guilty of nonfeasance for failing to index the document at all.
Thereafter, in Henrietta Bldg. Supplies v Rogers (117 Misc 2d 843 [Sup Ct, Monroe County 1983]), Justice Tillman snythesized the legal principles discussed above and held that neither the first opinion in Chittick (230 App Div 410, supra) nor Camfield (75 AD2d 671, supra) were to be followed, as section 316 of the Real Property Law since 1924 means that an improperly indexed mortgage is not constructive notice that a recorded mortgage exists. The court further held that where, as there, conflicting affidavits raised a question of actual notice, the complaint would not be dismissed.
*15 The court quoted from letters in the Bill Jacket pertaining to the 1924 amendment to section 316 of the Real Property Law and held (117 Misc 2d, supra, at 845): "Clearly, the amendment to section 316 in 1924 (L 1924, ch 582) was intended to enact that an error in indexing prevents the record from constituting constructive notice of the filed instrument. Until this amendment, the law had been governed by the Court of Appeals case, Mutual Life Ins. Co. of N. Y. v Dake (87 NY 256, 264), but wherein the court clearly indicated that it thought the law should be amended.”[1]
From this discussion it may be said that the state of the law regarding improper indexing of mortgages and priority rights is tortured and evolving. (See, 4A Warren’s Weed, New York Real Property, Recording, fl 4.04; 77 NY Jur 2d, Mortgages, §§ 110, 112; 92 NY Jur 2d, Records and Recording, § 81.) That the distinct principles of law uttered in the various cases has led to confusion is demonstrated by the following passage in 3A Warren’s Weed, New York Real Property (Mortgages, ¶ 8.03 [b], at 129): "An improper indexing by a clerk of a mortgage properly delivered did not impart constructive notice to subsequent mortgagors. As a result of the loss of priority, the first mortgage was subordinated to the second mortgage in time. It has been held that improper indexing by the clerk of a mortgage or assignment does not deprive the mortgagee or assignee of his or her priorities.” Clearly, a tension exists between the posits quoted above.
Other commentators on New York law in the real property and mortgage field appear to agree that indexing must be accurate or else the record does not constitute constructive notice. (2 Harvey, Real Property and Title Closing § 680; 1 Drussel and Foran, Mortgages & Mortgage Foreclosure in New York §§ 8.4, 8.5 [rev ed] [esp 1991 Cum Supp, at 165].) Of course, a mistake in indexing not induced by the mortgagee (O’Neill v Lola Realty Corp., 264 App Div 60, supra) does not invalidate the instrument but results in rendering the recorder liable for any loss the first to file mortgagee suffers on loss of priority. (Baccari v De Santi, 70 AD2d 198, supra; 66 Am Jur 2d, Records & Recording Laws, § 89.) This court believes that is the implicit intent behind the 1924 amendment to section 316 of the Real Property Law. (2 Merrill, *16 Notice, § 1072 [1952].) Errors in indexing involving the name of the mortgagor are sufficient to vitiate constructive notice of record. (Id.; Note, Recording and Registry Laws, 52 Harv L Rev 170 [1938].) Thus, the court is of the opinion that the harm, if any, in cases of this kind vis-á-vis competing mortgagees must be borne by the party who presents the instrument for recording for, as it has been noted, that is the one party who can readily ascertain if the instrument was properly indexed as part of recording. As a practical matter, the court is aware of the fact that it is accepted practice for a representative of the title insurer (assuming one is used) to cause the instruments to be delivered to the public officials and the reality is that the title insurer for diverse reasons may be called upon to pay its client for the loss of priority or improper indexing. Better practice may now dictate that shortly after presentation of the document the title company (or filer) run an additional search as of the date of recordation to establish proper indexing. (Cf., Peoples Natl. Bank v Weiner, 129 AD2d 782, 785 [2d Dept 1987] [imposing similar duty on filer of UCC financing statements "to insure that those documents had indeed been received and recorded”].) In any event, if the mistake occurred through the fault of the recording official, ultimate liability lies there.
At bar, a vice-president of Chemical Bank has stated by sworn affidavit that the bank had no notice, actual or constructive, of the plaintiffs mortgage until the commencement of this litigation. Plaintiff offers no opposition to the motions and, it seems, that the issues must be resolved in Chemical’s favor.

Amicus Curiae

[The court denied leave to plaintiffs assignor’s title insurer to appear as amicus.]

Conclusion

While the court is persuaded that the 1924 amendment to section 316 of the Real Property Law overruled the rule of law pronounced in Mutual Life Ins. Co. v Dake (87 NY 257, supra) and its progeny (Henrietta Bldg. Supplies v Rogers, 117 Misc 2d 843, supra), even if the Dake principle has vitality today on a recording officer’s nonfeasance (Baccari v De Santi, 70 AD2d *17 198, supra), a distinction without a difference in my opinion,[2] this case involves misfeasance and, therefore, the plaintiff’s mortgage as improperly indexed does not constitute constructive notice. No triable issues of fact have been advanced or exist on this record regarding the question of actual notice of the existence of the plaintiff’s mortgage by Chemical Bank.
Accordingly, the complaint must be dismissed against Chemical Bank and the rights of the parties declared that Chemical’s subsequent mortgage has priority over plaintiff’s mortgage.

. This court’s own review of the Bill Jacket satisfies it that it was most likely the intent of the Legislature to overrule Mutual Life Ins. Co. v Dake (87 NY 257).

. Why should a subsequent mortgagee’s rights depend upon the fortuitous event of nonindexing versus misindexing? Section 316 of the Real Property Law as of 1924 must be viewed as mandatory and nonfeasance is to be equated with misfeasance since negligence is negligence whether the act be of omission or by commission, active or passive. (PJI 2:10.)