**In re LE SUEUR'S FIESTA STORE, INC., an Arizona corporation, Debtor.**

**Bankruptcy No. B–81–2174–PHX–GBN.**

United States Bankruptcy Court, D. Arizona.

June 20, 1984.

J. Lawrence Dunlavey, Burch & Cracchiolo, P.A., Phoenix, Ariz., for trustee.

Thomas J. Salerno, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for First Interstate Bank of Arizona, N.A.

Edward E. Davis, Davis & Meyers, Phoenix, Ariz., for debtor.

Richard G. Patrick, Asst. U.S. Atty., Phoenix, Ariz., for IRS.

## ORDER

GEORGE B. NIELSEN, JR., Bankruptcy Judge.

First Interstate Bank of Arizona ("Bank") alleges the Trustee sold inventory and debtor's interest in a leased store location in Fiesta Mall for $5,000.00 and $75,000.00, respectively. It is alleged the Trustee is currently holding over $58,000.00 and the Bank's secured claim entitles it to the fund, less certain expenditures to be paid by order.

The Bank has presented evidence the debtor is obligated to it in the sum of $89,419.00 plus interest accruing from April 26, 1984, at a *per diem* rate of $20.62. Its debt is secured pursuant to an August 5, 1979 security agreement in certain of the debtor's property. The creditor attempted to perfect this interest through an August 21, 1979 filing with the Arizona Secretary of State pursuant to the State Uniform Commercial Code. A.R.S. § 44–3140(A)(3) (1984 Supp.). There has been no filing with the County Recorder of Maricopa County, Arizona.

The contest between the Bank and the Trustee [1] requires determination under Arizona Law of the proper place of filing to perfect a leasehold security interest.

The Trustee objects applicant lacks evidence it perfected a secured interest in the leasehold proceeds. Aside from a security agreement, claimant's rights flow from an Arizona UCC–1 financing statement describing its security as:

All accounts now owned or which may be hereafter acquired and contract rights and the proceeds thereof in any form, and inventory, all returned or repossessed goods arising therefrom or relat-

ing thereto. All proceeds from any insurance policies on any of the foregoing. Docket No. 99, Exhibit E.

The document itself is properly filed with the Secretary of State as prescribed.

■ The Trustee objects such a filing is insufficient perfection, since the creation of an interest in real property leases is specifically excluded from coverage under Arizona's Commercial Code. A.R.S. § 44–3104(10) (1984 Supp.). Arizona requires instruments affecting real property to be recorded in the County where the realty is located. A.R.S. §§ 33–411(A); 33–412(A). Under these statutes, an improperly recorded lease document is deprived of priority over a subsequent creditor without notice. *In re Wonderfair Stores, Inc. of Ariz.*, 511 F.2d 1206, 1214–15 (9th Cir.1975).

Further, the Trustee argues there is no evidence in the security agreement that the parties intended to create a lien in the leasehold. Accordingly, he seeks to avoid the Bank's alleged interest. 11 U.S.C. § 544(a).

The Bank first alleges a real property lease as collateral comes within the Arizona Commercial Code as a "general intangible" listed in the security agreement. A general intangible is defined as a collection of miscellaneous contractual rights, not otherwise provided in the Code, such as goodwill, literary rights, rights to performance, copyrights, trademarks, patents and other intangibles. A.R.S. § 44–3106 (1984 Supp.); U.C.C. § 9–106, Comment. No authority is cited for the proposition a leasehold interest constitutes an intangible.

■ Further, there is no mention of "general intangibles" in the filed financing statement. Exhibit E, *supra*. Accordingly, the statement is insufficient to perfect an interest in general intangibles. A.R.S. § 44–3141(A) (1984 Supp.).

Conceding that a leasehold interest is not specifically defined in the Arizona Commercial Code, the Bank urges Arizona common

---

**1.** Creditor Internal Revenue Service has also objected to the Bank's application. Objectors will be identified as "Trustee".

law defines a leasehold interest as personalty. *Harbel Oil Co. v. Steele,* 83 Ariz. 181, 318 P.2d 359, 361 (1957). Since general principles of common law supplement the Commercial Code (unless specifically displaced), the creditor argues *Harbel Oil* makes the perfection rules of the U.C.C. applicable here. A.R.S. § 44–2203.

■ *Harbel Oil* reflects the often contradictory aspects of a leasehold: while it possesses many characteristics of personalty it nevertheless transfers a present interest in real estate. 318 P.2d, at 361. The court there held the leasehold was to be foreclosed pursuant to the Arizona real property statutes. 318 P.2d, at 361; *Harbel Oil v. Superior Court of Maricopa County,* 86 Ariz. 303, 345 P.2d 427, 428 (1959). Further, an assignment of rent due under a lease is a realty interest under Arizona law which must be recorded pursuant to A.R.S. § 33–412. *Valley Nat'l Bank of Ariz. v. Avco Dev. Co.,* 14 Ariz. App. 56, 480 P.2d 671, 673–75 (1971).

To the extent *Harvel Oil* stands for the common law principle a leasehold is a chattel real, the rule has been abrogated by Arizona's enactment of its Commercial Code. A.R.S. § 44–3104(10). Landlord's liens are also not within the Code. A.R.S. § 33–3104(2) (1984 Supp.). Treatment of leases as real property interests appears consistent throughout the Arizona statutes. A.R.S. § 32–2101(24) (regulation of real estate industry); § 33–201(A) (definition of estates in land).

■ The sole Arizona authority advanced by the Bank reflects that as a chattel real, a lease must be foreclosed by real property procedures. 318 P.2d, at 361. An interest in real property which must be foreclosed by real property procedures in logic should be perfected through application of real property law.

■ Accordingly, as an "instrument affecting real property" a security interest in an Arizona lease is valid against the Trustee or subsequent purchasers or creditors without notice only if recorded in the County Recorder's office rather than with the Secretary of State. A.R.S. §§ 33–411(A), 33–412(A); *In re Wonderfair Stores, Inc.,* 511 F.2d, at 1214–15.

This interpretation was adopted by the Third Circuit in an identical factual situation. *In re Bristol Assocs.,* 505 F.2d 1056, 1058–62 (3d Cir.1974). The Pennsylvania provision construed in *Bristol Associates* was identical to A.R.S. § 44–3104(10) as both are codifications of U.C.C. § 9–104(j). 505 F.2d, at 1058–59. *See also In re Kennedy Mortg. Co.,* 17 B.R. 957, 962–65 (Bankr.D.N.J.1982). The Bank's contrary authority that security interests are within a state's Uniform Commercial Code was dictated strictly by a Florida state decision directly on point. *In re Boogaart of Fla., Inc.,* 17 B.R. 480, 484–85 (Bankr.S.D.Fla. 1981), *citing Gould, Inc. v. Hydro-Ski Int'l Corp.,* 287 So.2d 115, 116 (Fla. 4th D.C.A. 1974). The position set forth in *Bristol Associates* and U.C.C. § 9–104(j) was recognized, but the *Boogaart* court was constrained by the prior state decision. 17 B.R., at 485. By contrast, I do not interpret *Harbel Oil* as specifying the place of recording for leasehold security interests. An Arizona court, seeking to construe A.R.S. § 44–3104(10), would follow the weight of authority as evidenced by the Third Circuit decision. *In re Mistura, Inc.,* 22 B.R. 60, 62 (9th Cir.B.A.P.1982).

*Boogaart* interpreted creation of a leasehold security interest as a "contract right." The Bank also argues that inclusion of the term "contract right" in its financing statement sufficiently perfected its rights. Exhibit E, *supra.*

■ The short answer is that even if "contract rights" could be read to mean a leasehold security interest, the financing statement was filed in the wrong place to perfect an interest in realty. A.R.S. § 33–411(A).[2]

---

2. The term "contract right" was deleted from the Arizona U.C.C. in 1975. Laws 1975, ch. 65, § 13, eff. Jan. 1, 1976. Prior to its deletion, "contract right" was defined to be a right to payment *not* evidenced by an instrument or paper. A.R.S. § 44–3106 (1967).

163

■ I do not believe inclusion of the terms "general intangible" or "contract rights" is sufficient to put third parties on notice a security interest in a specific shopping center lease had been created. This is particularly true when the notice is not filed with the officer designated by Arizona law to record instruments which affect real property.

Accordingly, the Bank's application for disbursement of proceeds from the Trustee's sale of the lease is denied; creditor's application for disbursement of proceeds from the Trustee's sale of inventory, less certain expenses, is granted. The Trustee will lodge and serve a final order consistent with this opinion.

ORDERED ACCORDINGLY.