In re The NEW 5510, INC., t/a
Swiss Cafe, Debtor.

Betty JETTMAR, Plaintiff,

v.

The NEW 5510, INC., t/a Swiss Cafe
and Madison National Bank,
Defendants.

Bankruptcy No. 89–00249.
Adv. No. 89–0073.

United States Bankruptcy Court,
District of Columbia.

April 2, 1990.

See also, Bkrtcy., 114 B.R. 323.

Russell J. Gaspar, Washington, D.C., for plaintiff.

Loren L. Chumley, Washington, D.C., for defendants.

## DECISION REGARDING MOTIONS FOR JUDGMENT ON THE PLEADINGS

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Plaintiff Betty Jettmar ("Jettmar") has sued for a determination that her lien on certain assets of The New 5510, Inc., ("the Corporation") takes priority over the later-filed lien of Madison National Bank ("Madison"). The Court determines that Jettmar's lien was unperfected for failure to list the Corporation as debtor on Jettmar's financing statement and must be avoided under 11 U.S.C. § 544(a)(1). Accordingly, Jettmar has no lien which she may assert and her adversary proceeding shall be dismissed.

### I

### PROCEDURAL BACKGROUND

The Court has under consideration the "Motion of Defendant Madison National

Bank for Judgment on the Pleadings,"[1] "Plaintiff's Cross–Motion for Judgment on the Pleadings,"[2] "Defendant The New 5510, Inc.'s Motion for Judgment on the Pleadings," the memoranda in support of the motions, and the oppositions thereto.

The Corporation operated a restaurant on premises at 5510 Connecticut Avenue, N.W., in Washington, D.C., leased from Gertrude H. Parker and Edith P. Frick. In the Corporation's chapter 11 case the Court approved a sale of its assets to Parthenon, Inc., for $120,000.00. Jettmar seeks to establish that she has a lien on the portion of those sale proceeds derived from the sale of the Corporation's leasehold interest and fixtures. Jettmar insists that her lien therein takes priority over Madison's allegedly unperfected lien. Jettmar concedes that her lien in the Corporation's equipment and furniture was not perfected and concedes the priority of Madison's lien on the proceeds of those assets. If Jettmar's positions are correct, the assets sold to Parthenon would have to be valued and the proceeds apportioned between Madison's lien on the furniture and equipment and Jettmar's lien on the leasehold interest and fixtures.

The Corporation seeks entry of an order declaring that Jettmar does not have an enforceable security interest in the proceeds of the collateral at issue. Alternatively, the Corporation seeks a determination that Jettmar's interest, if any, is unperfected and hence is both junior to the security interests of Madison and avoidable by the Corporation as a hypothetical judgment lien creditor under 11 U.S.C. § 544(a).

## II

### FACTS

Jettmar is the former sole shareholder of the Corporation. In 1986 Jettmar sold her entire interest in the common stock of the Corporation to Charles Reichmuth ("Reichmuth") pursuant to a written agreement.[3] Reichmuth was then apparently president of the Corporation. See Exhibit 1 to plaintiff's opposition (Docket Entry No. 13) to the Corporation's motion. In connection with the sale Reichmuth signed a promissory note secured by a Security Agreement executed by Reichmuth, as debtor. Through the Security Agreement Reichmuth attempted to grant a security interest to Jettmar in certain collateral including the "[l]easehold interest on restaurant premises at 5510 Connecticut Avenue, N.W., Washington, D.C., which includes the following: [list of fixtures and equipment]." The Corporation is not mentioned in the Security Agreement.

Jettmar filed a financing statement covering the assets described in the Security Agreement. On that financing statement under the heading "Name(s) of Debtor(s) or assignor(s)" appears "Charles F. Reichmuth of 4601 North Park Avenue, Chevy Chase, Maryland." Reichmuth signed the statement as "Debtor(s) or assignor(s)." The name of the Corporation does not appear on the face of the financing statement. It does, however, appear at the top of the list of fixtures and equipment attached to the financing statement. That list is referred to on the face of the financing statement in a typed portion under Paragraph 1, describing the types of property covered as follows:

> Leasehold interest on restaurant premises at 5510 Connecticut Avenue, N.W., Washington, D.C. 20015, which includes various fixtures and equipment shown on the attached sheet and which is made a part hereof.

The description ends with a handwritten reference underneath the typed paragraph: "Lot 86 Square 1859." Paragraph 3 of the financing statement states that the above-

---

**1.** Madison National Bank has not answered, and its motion really is a motion to dismiss under F.R.Civ.P. 12(b)(6), made applicable here by Bankruptcy Rule 7012.

**2.** As against Madison National Bank, the plaintiff's cross-motion technically is only a motion for summary judgment.

**3.** Madison denies Jettmar's assertion that Reichmuth was the only shareholder of the Debtor after the sale from her.

described goods are affixed to: "Restaurant premises at 5510 Connecticut Avenue, N.W., Washington, D.C. 20015. Owners, Gertrude H. Parker & Edith P. Frick. Value of leasehold articles $15,000.00."

Jettmar's financing statement was filed with the Office of the Recorder of Deeds for the District of Columbia in 1986 and was allegedly cross-filed in both the land records by lot and square of the real estate covered and under the name of Charles Reichmuth. Jettmar concedes that the Recorder of Deeds records real estate deeds under a grantor-grantee index but states that they are also cross-referenced by the lot and square number of the real property.

The next year the Corporation granted a security interest covering essentially the same assets to Madison. Madison's financing statement, which Reichmuth signed as president of the Corporation, names "New 5510, Inc." as the debtor. It only lists the street address for the property covered, not the lot and square designations for the property. The box in the upper right-hand corner of the financing statement, which is to be marked if the statement is to be recorded in the land records, is left blank.

### III

### DISCUSSION

#### A. *Whether Jettmar's lien was unperfected*

The Court need not address the threshold question of whether Jettmar has a lien in the Corporation's leasehold interest and fixtures because, even if she does, that lien was not perfected. Thus, a finding in Jettmar's favor on that issue would not affect the ultimate conclusion that Jettmar has no lien which she may assert against Madison.

■ Jettmar failed to perfect her lien under either the District of Columbia Uniform Commercial Code ("UCC") (subtitle I of title 28, D.C.Code) or its real property law. For instance, in addition to the UCC's filing requirements under § 9–302(1), the UCC requires that the financing statement name and be signed by the "debtor." UCC § 9–402(1). "Debtor" for purposes of Article 9—

means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral.... Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires;

\* \* \* \* \* \*

UCC § 9–105(1)(d). In the context of a financing statement used by an obligor to encumber property owned by another, the term "debtor" refers to both the owner of the collateral and the obligor. *See, e.g., Southwest Bank of Omaha v. Moritz*, 203 Neb. 45, 277 N.W.2d 430, 435 (1979); *General Motors Acceptance Corp. v. Washington Trust Co. of Westerly*, 120 R.I. 197, 386 A.2d 1096 (1978). *See also In re Terry Pierson, Inc.*, 84 B.R. 533, 535 (Bankr.S.D. Ill.1988) (financing statement filed in name of debtor's principal as individual and not in name of corporate debtor insufficient to perfect bank's security interest in corporate assets, even though financing statement signed in corporate capacity by one of debtor's principals).

■ Thus, in order to perfect a security interest in collateral under the UCC the name of the owner of the collateral must appear on the financing statement and the owner must sign it to ensure that subsequent creditors of the owner of the collateral will have notice of the possible prior security interest. *Terry Pierson*, 84 B.R. at 535. The owner's name does not appear on Jettmar's financing statement. The reference to "The New 5510, Inc." at the beginning of the attachment to the financing statement listing the fixtures and equipment covered did not cure the defect: no indication was made that "The New 5510, Inc." was being listed as the "debtor." Thus, Jettmar's lien is not perfected under the UCC.

Jettmar further argues that, inasmuch as fixtures are in the nature of real property

interests, her security interest in the leasehold and fixtures was perfected because her financing statement was properly filed under the land records.[4]

 In the case of fixtures, she points specifically to the District's statute which states:

A financing statement ... filed as a fixture filing (section 28:9–313) where the debtor is not a transmitting utility, must show that it is to be filed in the real estate records, and the financing statement must contain a description of the real estate sufficient if it were contained in a mortgage of the real estate to give constructive notice of the mortgage under the law of the District. If the debtor does not have an interest of record in the real estate, the financing statement must show the name of a record owner.

UCC § 9–402(5). In other words, the law in the District of Columbia requires that a financing statement must indicate on its face that it is to be filed in the land records and must contain a description of the property that would be adequate on a valid mortgage. Jettmar contends her financing statement met both of those requirements. Even if that is true, it does not follow that her security interest is perfected. In focusing her attention on the question of whether her financing statement meets the requirements of UCC § 9–402(5), she fails to recognize that the requirements of UCC § 9–402(1) apply to a fixture filing just like any other financing statement and required her to list the name of the debtor (which included the name of the owner of the collateral for reasons discussed above). That she did not do. She further overlooks the effect of UCC § 9–403(7) which provides:

When a filing [sic] statement ... is filed as a fixture filing, it shall be filed for record and the filing officer shall index it under the names of the debtor and any owner of record shown on the financing statement in the same fashion as if they were the mortgagors in a mortgage of the real estate described, and, to the extent the law of the District provides for indexing of mortgages under the name of the mortgagee, under the name of the secured party as if he were the mortgagee thereunder, or where indexing is by description in the same fashion as if the financing statement were a mortgage of the real estate described.

Jettmar concedes, as appears implicit in § 9–403(7), that mortgages are indexed in the District of Columbia land records in a grantor-grantee index under the grantor's name. Jettmar alleges that mortgages are also cross-referenced by the lot and square number of the real property. Even assuming that allegation to be accurate, Jettmar does not prevail. Her financing statement was not indexed under the name "The New 5510, Inc.," but under the name of Charles Reichmuth. As in the case of personal property, third parties searching under the Corporation's name would not have discov-

---

4. *UCC § 9–313 provides:*

In this section and in the provisions of part 4 of this article referring to fixture filing, unless the context otherwise requires

\* \* \* \* \* \*

(b) a "fixture filing" is the filing in the office where a mortgage on the real estate would be filed or recorded of a financing statement covering goods which are or are to become fixtures and conforming to the requirements of section 28:9–402(5);

\* \* \* \* \* \*

*UCC § 9–401 provides:*

(1) The proper place to file in order to perfect a security interest is, in all cases, in the office of the Recorder of Deeds of the District. \* \* \* [W]hen the financing statement is filed as a fixture filing (section 28:9–313) and the collateral are goods which are or are to become fixtures, then the proper place to file in order to perfect a security interest is in the office of the Recorder of Deeds of the District where a mortgage on the real estate would be filed or recorded.

(2) A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this Article and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

\* \* \* \* \* \*

It is also noted that D.C.Code § 45–701 (1981) provides for mortgages to be filed in the same manner as absolute deeds. The Recorder of Deeds of the District of Columbia is charged with recording all deeds. D.C.Code § 45–901.

ered the financing statement and they would not have been put on notice that Jettmar claimed a perfected security interest in the fixtures of the Corporation. The fact that a search under the lot and square number records might have disclosed the security interest does not alter the result: creditors ought to be allowed to rely on a search under the grantor-grantee index. It might be safer to check both indexes to guard against a misfiling or an unusual filing practice under the grantor-grantee index. But nothing requires that expense to be incurred. The same reasoning applies as well to the argument that subsequent creditors could have protected themselves by searching under the name of the lessor as record owner of the real estate. *See, e.g., Terry Pierson, Inc.,* 84 B.R. at 535. Jettmar's security interest was not perfected.

While UCC § 9–313(3) provides that the UCC's article 9 "does not prevent creation of an encumbrance upon fixtures pursuant to real estate law," Jettmar's financing statement was filed as a financing statement, not as a mortgage. Even if it could be viewed as a mortgage,[5] Jettmar did not perfect a lien against innocent third parties.

■ Although it seems too obvious to need stating, a mortgage filing that fails to list the owner of the collateral is no more effective to constitute a valid financing statement than a similarly defective financing statement would be. UCC § 9–402(6) ("mortgage is effective as a financing statement filed as a fixture filing ... if ...

(c) the mortgage complies with the requirements for a financing statement in this section ...") *and* UCC § 9–402(1) (requiring name of debtor, *i.e.,* owner of collateral, to be listed).

■ Even viewed strictly as a mortgage, Jettmar's lien fares no better. Mortgages in the District of Columbia are filed in a grantor-grantee index and hence the failure to list the Corporation as owner of the collateral would not give notice to innocent third parties searching that index as contemplated by D.C.Code §§ 45–701[6] and 45–801[7]. *See Crosby v. Ridout,* 27 App. D.C. 481 (1906) (recordation of deed of trust from a stranger to the record of title is not constructive notice that the grantor is the grantee of the last record owner).

■ Jettmar contends that the Corporation's leasehold interest was real property. In support of that argument, Jettmar cites D.C.Code § 45–204 which provides in relevant part that "estates for years shall be chattels real...." *Compare Jacobsen v. Sweeney,* 202 F.2d 461 (D.C.Cir.1953) (leasehold was an estate in land and agreement of sale thus required a writing signed by the party to be charged under statute of frauds) and *Camalier & Buckley–Madison, Inc. v. Madison Hotel, Inc.,* 513 F.2d 407, 414 (D.C.Cir.1975) (lease conferred on tenant an interest in the leased realty and thus something more than just contract rights) *with Stagecrafters' Club, Inc. v. District of Columbia Div. of Amer. Legion,* 211 F.2d 811, 812 (D.C.Cir.1954) (alternative holding), *aff'g* 110 F.Supp. 481, 483 (D.D.C.1953) ("chattel real" is personal

---

**5.** In the District of Columbia an instrument is a mortgage only if it is "executed by having the seal of the corporation attached and being signed with the name of the corporation, by its president or other officer" and is "acknowledged as the deed of the corporation by an attorney appointed for that purpose, by a power of attorney...." D.C.Code § 45–502.

**6.** D.C.Code § 45–701 provides:

Mortgages and deeds of trust to secure debts, conveying any estate in land, shall be executed and may be acknowledged and recorded in the same manner as absolute deeds; and they shall take effect both as between the parties thereto and as to others, bona fide purchasers and mortgagees and creditors, in

the same manner and under the same conditions as absolute deeds.

**7.** D.C.Code § 45–801 provides:

Any deed conveying real property in the District, or interest therein, ... executed and acknowledged and certified as provided in §§ 45–306, 45–502, 45–601 to 45–604 and delivered to the person in whose favor the same is executed, shall be held to take effect from the date of delivery thereof, except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of delivery to the Recorder of Deeds for record.

property for purposes of tax collector's levy). *Cf. Commercial Credit Co. v. Campbell,* 74 F.2d 468 (D.C.Cir.1934) (landlord's assignment of rents was assignment of personal property). Jettmar thus urges that the perfection of her security interest in the leasehold interest was governed by real property law, not the District's UCC. *See* UCC § 9–104(j).[8] *Compare In re Boogaart of Fla., Inc.,* 17 B.R. 480, 484–5 (Bankr.S.D.Fla.1981) (leasehold interest was a contract right covered by commercial code) *with In re Le Sueur's Fiesta Store, Inc.,* 40 B.R. 160, 162–63 (Bankr.D.Ariz. 1984) (leasehold interest of lessee was interest in real estate and required a real estate recording). Neither defendant has addressed this issue, but the Court need not decide it. The Court will assume for purposes of analysis that creation of a lien upon the Corporation's leasehold interest is not governed by the District's UCC but is governed by the District's real property law. In that event, Jettmar never obtained a perfected lien under real property law against innocent third parties for the same reasons her financing statement failed to be a perfected mortgage in the case of fixtures.

■ For all of these reasons, Jettmar's lien, if one even existed, is avoidable by the Corporation (exercising the powers of a trustee as debtor-in-possession) pursuant to 11 U.S.C. § 544(a)(1). That avoidance power having been invoked, the lien shall be declared avoided.[9]

**B.** *Madison's security interest*

■ Jettmar challenges Madison's security interest in fixtures and the leasehold interest on the basis (1) that the fixtures filing did not recite that it was to be filed in the land records as required by UCC § 9–402(5) and it was not filed in the land records as required by UCC § 9–403(7), (2)

that by virtue of UCC § 9–104(j) the leasehold interest is an interest in real property and the lien on the Corporation's leasehold interest was not perfected because it was not filed in the land records (*see In re Le Sueur's Fiesta Store, Inc.,* 40 B.R. at 162–63, and discussion of related cases above), and (3) that the mere listing of the street address of the leased premises was an inadequate real property description (*see* UCC § 9–402(5) and D.C.Code § 45–701). But the avoidance of Jettmar's lien leaves her with no standing as a secured creditor to complain about whether Madison properly perfected its lien.

### CONCLUSION

The plaintiff's complaint shall be dismissed with prejudice and its lien declared avoided.

---

**8.** UCC § 9–104(j) provides that article 9 does not apply "except to the extent that provision is made for fixtures in section 28:9–313, to the creation of or transfer of an interest in or lien on real estate, including a lease or rents thereunder."

**9.** The Corporation did not counterclaim to avoid Jettmar's lien but prayed for the relief of

avoidance in its motion. Jettmar does not contest The New 5510, Inc.'s right to raise avoidance as a defense. In any event, it would be appropriate to allow amendment of the pleadings to conform to the issues tried via summary judgment procedures. *See* F.R.Civ.P. 15(b); Bankr.R. 7015.