**In re Kenneth O. HARRIS, Debtor.**

**Kenneth O. HARRIS, Plaintiff,**

v.

**MARYLAND NATIONAL BANK,
et al., Defendants.**

Bankruptcy No. 90–00130.
Adv. No. 90–0105.

United States Bankruptcy Court,
District of Columbia.

March 21, 1994.

did not extinguish the lien (because it was a revolving credit lien), and (4) that the holder of a junior lien is not entitled to equitable subrogation for having lent funds that paid off the previous outstanding balance.

## I. Background

Kenneth O. Harris ("the debtor" or "Plaintiff") is a debtor-in-possession entitled under 11 U.S.C. § 1107(a) to exercise the powers of a trustee. He seeks, pursuant to 11 U.S.C. § 544(a), to avoid a second deed of trust lien held by the defendant Maryland National Bank ("MNB"). As against the second defendant, the estate of Melvyn Friedman (referred to for brevity as "Friedman"), which holds a third lien deed of trust, the debtor seeks to preserve MNB's lien for the benefit of the bankruptcy estate.

MNB holds a second lien deed of trust on the debtor's residence. MNB's deed of trust properly identified the property by its street address, but incorrectly identified it as being in square 452, rather than square 1452. The debtor contends that MNB's lien is unperfected because it was recorded with an incorrect property description that prevents it from being found in a title search by subsequent purchasers.

MNB denies that its lien is unperfected, and has also filed a cross-claim against Friedman seeking declaratory judgment that its lien has priority over Friedman's lien. Friedman denies MNB's allegations, and asserts several affirmative defenses. Plaintiff and MNB have each moved for summary judgment, and each party has filed memoranda and affidavits regarding these motions.

Due to the erroneous property description, searches in the District of Columbia real property record indexes organized by square and lot numbers would not disclose the existence of MNB's deed of trust. A search of the grantor/grantee index would have disclosed the deed of trust, although that index included a reference to the erroneous square number, and no reference to the correct street address. The central issues before the court are (1) whether this error in the description of the real property, which prevented the deed of trust from being indexed

Marcia Docter, Washington, DC, for debtor/plaintiff.

Daniel J. Shea, Paul J. Maloney, Washington, DC, for defendants.

### DECISION RE MOTIONS FOR SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

On motions for summary judgment the court determines (1) that the defendant bank's second deed of trust lien on the debtor's residence was perfected and is not avoidable under 11 U.S.C. § 544(a), despite the deed's listing an erroneous square number, (2) that the error does not give rise to equitable estoppel, (3) that the payment of the previous outstanding amount owed the bank

properly in the D.C. land records, renders MNB's mortgage lien unperfected; and (2) if not, whether this error equitably estops MNB from pleading the perfection of its lien.

Friedman, which lent funds that were used to pay off the previous outstanding balance owed MNB, seeks a determination that that payoff extinguished the lien or, alternatively, equitably subrogated Friedman to MNB's lien priority.

## II. *Standard For Summary Judgment*

The court's recent enunciation of standards for granting summary judgment in *Dicello v. Jenkins*, 160 B.R. 1 (Bankr.D.D.C.1993), is adopted here and will not be restated in this text. As set forth below, based on the undisputed facts viewed in the manner most favorable to the debtor and Friedman, summary judgment in favor of MNB will be granted.

## III. *Undisputed Facts*

On or about December 16, 1988, the debtor executed a second lien[1] Home Equity Credit Line Deed of Trust to MNB, securing a revolving line of credit in a maximum principal amount of $68,500. This deed of trust granted MNB a lien on the debtor's residence, and correctly identified the property by its street address and by reference to the recorded deed by which the debtor took title to the property. However, the deed of trust erroneously described the property as being in Square 452, rather than the correct location of Square 1452.[2]

The deed of trust was recorded in the office of the Recorder of Deeds on December 23, 1988, and was indexed under the debtor's name in the grantor/grantee index. However, the grantor/grantee index contains space for lot and square numbers, which reflected the incorrect information contained in the deed of trust. Moreover, due to the error, the deed of trust was incorrectly indexed in the separate lot and square index upon which many searchers rely.

In July 1989, the debtor borrowed $175,000 from Friedman, secured by another deed of trust. A title search undertaken prior to the closing on the Friedman loan did not disclose MNB's lien, apparently because of the erroneous property description and resulting misindexing in the lot and square index. Approximately $68,000 of the Friedman loan was used by the debtor to repay the outstanding balance on the MNB line of credit.

On February 26, 1990, the debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. In July, 1990, MNB filed a proof of claim asserting a secured claim in the amount of $84,817.58 as of July 2, 1990, reflecting principal advances made to the debtor after the Friedman loan and interest on those advances, plus per diem interest of $22.04.

## IV. *Legal Issues*

### A. *MNB Perfected Its Mortgage Lien By Recordation With The District Of Columbia Recorder Of Deeds*

■ The requirements and effect of recordation are statutory matters that must be determined by reference to the governing legislative enactments. *See Frank v. Storer*, 308 Md. 194, 517 A.2d 1098, 1101 (1988). Section 45–701 of the D.C. Real Property Code specifies that a mortgage or deed of trust shall take effect, as to third parties, "in

---

1. The property was already subject to a first mortgage lien in favor of Citicorp Mortgage, Inc., in the amount of $523,500.00.

2. MNB's Home Equity Credit Lien Deed of Trust lists the property as: "All that certain lot, piece or parcel of land know [sic] for assessment and taxation purposes as Lot 62 in Square 452 as more fully described in a deed from WILLIAM B. KREMENS ET AL to the Borrowers and recorded in instrument No. 45374–88, dated 07/18/88 at Liber No. —— Folio No. ——, which has the address of 5721 POTOMAC AVENUE N.W. Washington, D.C. 20016. * SEE ADDENDUM A."

Addendum A describes the Property as "Lot Numbered 62 in square numbered 452 in a subdivision made by POTOMAC HEIGHTS LAND CO. as per plat recorded in the Office of the Surveyor for the District of Columbia in plat book 12262 at page 610, Part of lot 29. Being more fully described in instrument number 45374–88."

According to the title reports submitted by Plaintiff with its motion for summary judgment, instrument number 45374 was the deed conveying title in the property to the debtor.

the same manner and under the same conditions as absolute deeds." As set forth in Section 45–801, an absolute deed takes effect as to subsequent bona fide purchasers without notice "from the time of its delivery to the Recorder of Deeds for record." Section 45–801 does not require indexing of the deed for it to be effective as to third parties.[3] Nor does it specify the form or contents of a deed beyond requiring that it be executed, acknowledged and certified in accordance with related statutory provisions.[4]

Although there appears to be no controlling precedent in the District of Columbia, in other states that do not require indexing as a statutory matter, the improper indexing of a document has been held not to invalidate the recordation of the deed or mortgage. *See, e.g., Frank v. Storer*, 308 Md. 194, 517 A.2d 1098 (1988); *Haner v. Bruce*, 146 Vt. 262, 499 A.2d 792 (1985); *cf. Aikens v. City of Philadelphia*, 100 B.R. 729, 731–32 (E.D.Pa.1989) (where statute requires indexing as part of recordation, unindexed interest may be avoided by debtor in possession). To the extent that the Recorder of Deeds chooses to maintain one or more indexes as an aid to the public, the public may avail itself of those indexes, but improper indexing does not negate perfection. *Armstrong v. Ashley*, 22 App.D.C. 368, 376 (1903) (index of property subject to suits in ejectment, maintained by clerk without legal requirement, may not be relied upon; parties have notice of all that

legal dockets would disclose), *aff'd*, 204 U.S. 272, 27 S.Ct. 270, 51 L.Ed. 482 (1907).

■ Recordation of a deed of trust provides constructive notice to subsequent purchasers or lienors of all matters which would be disclosed by examination of that deed of trust. *See generally* 66 Am.Jur.2d *Records and Recording Laws* § 145 (1973). MNB's deed of trust contained the street address of the debtor's residence, and contained a correct legal description of the property apart from the one-digit error in the square number. It also referred to instrument number 45374–88, the deed under which the debtor took his title to the property. The deed of trust thus contained sufficient information to put subsequent purchasers on notice of MNB's lien on the property.[5]

■ As the affidavits submitted by Friedman indicate, the grantor/grantee index may, due to MNB's negligence, include an incorrect square number, and the grantor/grantee index may in fact be in general disuse. However, as a statutory matter, a party is on constructive notice of the contents of a deed of trust that has been recorded regardless of indexing—correct, incorrect or nonexistent. A party may choose to rely on the indexing information if it so chooses, but it does not have any right to do so and it cannot plead an error in that index as a defense to constructive notice of the contents of a deed of trust that is within its grantor's chain of title.

3. D.C.Code Section 45–926(b) states that "The Recorder of Deeds of the District shall maintain a separate filing and indexing system for deeds that evidence a transfer of an economic interest in real property in the District, which shall be open to the public." Section 45–923 makes clear that "deed that evidences a transfer of an economic interest in real property" are not the same as deeds conveying interests in real property. Rather, they are transfers of a controlling interest in any entity that obtains more than 50% of its gross receipts from real property, or which has real property as more than 80% of its tangible assets. There is no equivalent provision requiring the Recorder of Deeds to maintain an index of deeds conveying real property interests.

4. Section 47–1431 of the D.C.Code provides that within 30 days of the execution of a deed or mortgage, the holder of the deed or mortgage shall file a copy thereof "including the lot and square number of the real property transferred or encumbered, with the Recorder of Deeds of

the District of Columbia." The statute does not state that the specification of lot and square numbers is a prerequisite to deeming the deed or mortgage effective as to third parties, and no requirement for lot and square numbers occurs in Sections 45–701 and 45–801. Section 47–1431 is part of Chapter 14, entitled "Residential Real Property Transfer Excise Tax," of title 47, entitled "Taxation and Fiscal Affairs," and appears to be intended to facilitate enforcement of the tax laws, not to specify requirements for perfection of deeds and mortgages.

5. The affidavits of Dirk J. Bakker and Marian W. Reid, filed by Friedman, show that the description contained in MNB's deed of trust was sufficient to enable a title company to determine the error in the square number and the actual property intended to be described, and that First American Title Insurance Company and the Plantco title plant did in fact catch the error and correctly index MNB's deed of trust under Square 1452.

*Guillette v. Daly Dry Wall, Inc.*, 367 Mass. 355, 325 N.E.2d 572, 575 (1975) ("Lot numbers or other descriptive information, even though included in an index, do not change what is recorded. . . . [T]he purchaser cannot be safe if the title examiner ignores any deed given by the grantor in the chain of title during the time he owned the premises in question").

### B. *Policy Considerations Do Not Alter The Conclusion That MNB Perfected Its Lien*

Plaintiff contends that, as a matter of policy, MNB's lien ought not be deemed perfected because MNB was in the position to discover the misindexing and have it corrected, while subsequent mortgagees or purchasers were not. Plaintiff argues that the loss from failure to take this extra care should be placed on the party in the best position to prevent the loss. Whether or not that is the proper policy choice is not before this court. Some states have made proper indexing an element of perfection of a security interest or lien, or have prescribed specific information to be included in a recorded instrument. *See, Jettmar v. The New 5510, Inc. (In re The New 5510, Inc.)*, 114 B.R. 317 (Bankr. D.D.C.1990) (failure to include debtor's name on U.C.C. financing statement, as required by statute, renders lien unperfected); *Aikens v. City of Philadelphia*, 100 B.R. at 731–32. The District of Columbia has imposed no such requirements for the perfection of real property interests, and this court cannot infer such a requirement in derogation of statutory provisions. *See Frank v. Storer*, 308 Md. 1098, 200, 517 A.2d 1098, 1101 (1988) ("Registration systems are purely of statutory origin, and the convenience or inconvenience of searching the records as well as the authority and effect of the registry acts are subjects of the legislative will"), (quoting *Plaza Corp. v. Alban Tractor Co.*, 219 Md. 570, 582, 151 A.2d 170, 176 (1958)).

Affidavits have been submitted on the practices of the title insurance industry in the District of Columbia, purporting to address whether a bona fide purchaser would act reasonably in relying on the lot and square indexes in the public records. Plaintiff and Friedman have offered affidavits purporting to show that the practice of the title insurance industry in the District of Columbia is to rely on the square and lot index and not to use the grantor/grantee index. MNB has offered countervailing affidavits stating that a search that does not include the grantor/grantee index is not a reasonable search.

■ These factual questions are not at issue because whether or not misindexing defeats constructive notice of MNB's deed of trust is a question of law which can be answered from the controlling statute on recordation. The customs of title insurers do not control the effect of recordation or indexing. *See Eltman v. Harvey*, 93 Misc.2d 634, 403 N.Y.S.2d 428, 432 (N.Y.Sup.Ct.1978) (failure of recording officer to made correct marginal notations on recorded instrument does not affect whether or not constructive notice has been given under statute, notwithstanding industry practice of relying on such notations). Title insurers are entitled to determine for themselves whether the added protection of cross-checking the square and lot index against the grantor/grantee index is cost effective. It may be that paying losses on an occasional missed interest—as in this case—is less costly than checking the grantor/grantee index on a myriad of relatively small transactions. This is a business judgment that each title insurer can make, but it has no bearing on what elements of recordation or indexing constitute perfection.

If the question were not one of law, tremendous uncertainty would result which would undermine a key goal of any recording system. The courts would have to decide which index or indexes could be relied upon; what weight to give different potential errors in the index; whether the standard is what a "reasonable title insurer" or a "reasonable person" would do to research title. In this case, it might also be necessary to decide whether MNB knew (or, perhaps, should have known) that its lot and square numbers would be so heavily relied upon in D.C.'s recording and indexing system. The purpose of a recording statute is to provide certainty; finding that an interest is not perfected despite compliance with the recording statute would destroy this certainty. Given the clear

language of Sections 45–701 and 45–801, the court finds it unnecessary, and indeed improper, to address these policy questions.

### C. *The Erroneous Property Description Did Not Prevent Perfection Of MNB's Lien*

■ Friedman contends that, as a matter of law, a deed of trust containing an erroneous property description cannot provide constructive notice to a subsequent purchaser, citing *O'Neill v. Lola Realty Corp.*, 264 A.D. 60, 34 N.Y.S.2d 449, 451 (1942); *Poncelet v. English*, 243 Mont. 481, 795 P.2d 436 (1990); *Air Flow Heating and Air Conditioning, Inc. v. Baker*, 326 So.2d 449 (Fla.App.1976), and cases cited in *Ely v. Hoida*, 70 Mont. 542, 226 P. 525, 528 (1924).

None of these cases is persuasive. *O'Neill* relied on an explicit statutory provision incorporating the index into the record, and stating that where an instrument is indexed under an erroneous block designation the instrument shall be effective only from the time when the index is corrected. No such statute exists in the District of Columbia.

In *Poncelet*, the incorrect property description identified other, existing property. The court held that where the property description identified land other than that intended to be conveyed, it was not constructive notice to a subsequent purchaser. In *Ely v. Hoida*, the description was of nonexistent property lying in the "the Lenox addition to the City of Butte" (which did exist); the actual land was not, in fact, anywhere in the Lenox addition and the description therefore did not give constructive notice. In *Air Flow Heating*, the recorded mortgage contained no description of the property at all.

In none of these cases did the mortgage contain any reference to the correct property, or any ambiguity that would place a subsequent encumbrancer on notice of the location of the actual property. In contrast, MNB's deed of trust contained the correct street address of the debtor's property and a reference to the deed under which the debtor

took title, which are descriptions sufficient to notify subsequent purchasers of MNB's lien. *See Hildebrandt v. Hildebrandt*, 9 Kan. App.2d 614, 683 P.2d 1288 (1984) (conflicting descriptions of property, one with correct section number and one incorrect, plus reference to "Hildebrandt Island," put subsequent purchasers on constructive notice of interest); *In re Morse*, 30 B.R. 52, 55 (Bankr. 1st Cir.1983) (awareness of an inconsistency in the land records places purchaser on notice of all that further inquiry would reveal); *Clay v. Washington Post Co.*, 604 A.2d 890 (D.C.App.1992) ("[a] purchaser is on inquiry notice where he or she is aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances.").

### D. *MNB Is Not Estopped From Pleading Perfection Of Its Lien*

■ Friedman contends that because MNB's error caused the faulty indexing, MNB is therefore estopped from claiming that its recordation provided notice to third parties. Although Friedman's argument has some appeal, the court must reject it.

The cases analyzing whether a deed or mortgage is effective notwithstanding faulty indexing typically deal with situations in which the error was the result of negligence by the recording office or fraud by the grantor. *See, e.g., Haner v. Bruce* (error by recording office); *Aikens v. City of Philadelphia*, (same); *Armstrong v. Ashley*, (same); *Fullerton Lumber Co. v. Tinker*, 22 S.D. 427, 118 N.W. 700 (1908) (fraud by grantor). In these cases, it is generally found that an indexing error by the clerk does not deprive the grantee of the protection of the recording statute, even though subsequent purchasers could not discover the prior interest.

Here, the deed of trust was improperly indexed due to the error of MNB in specifying the square on which the property is located.[6] Friedman asserts that when a

---

**6.** The closest analogous case the court found is *Columbia Gas Transm. Corp. v. Bennett,* 71 Ohio App.3d 307, 594 N.E.2d 1 (2 Dist.1990) (easement misindexed due to erroneous property de-

scription does not provide constructive notice to subsequent purchaser). *Columbia Gas* was not based on estoppel and is distinguishable from the present case in that the easement at issue in

grantee's error causes the deed of trust to be undiscoverable by subsequent purchasers; the grantee must be estopped from pleading recordation of that deed of trust. *See Turman v. Bell,* 54 Ark. 273, 280–83, 15 S.W. 886, 888 (1891) ("party whose negligence made the loss possible should bear it, and should be estopped to set up his prior right against the party without fault").

■ To establish equitable estoppel, four elements must be shown: "False representation, a purpose to invite action by the person to whom the representation was made, ignorance of the true facts by that party, and reliance." *Hoeber v. District of Columbia Redev. Land Agency,* 483 F.Supp. 1356, 1365 (D.D.C.1980), *aff'd mem.,* 672 F.2d 894 (D.C.Cir.1981). Moreover, the party's reliance must be reasonable. *United States v. Exxon Corporation,* 561 F.Supp. 816, 845 (D.D.C.1983) *aff'd,* 773 F.2d 1240, (Temp.Emer.Ct.App.1985), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986).

■ Here a false representation—placing the wrong square number on the recorded deed of trust—has been shown. This was not an intentional misrepresentation, but negligence will support a claim of estoppel. Moreover, there was "a purpose to invite action by the person to whom the representation was made." MNB recorded the deed of trust specifically to give notice to the public of its interest in the property, and therefore must have expected third parties to rely on the document it recorded.

Assuming for the moment that neither Friedman nor the Plaintiff (as a hypothetical bona fide purchaser) had knowledge of MNB's lien, the central issue is whether, as a matter of law and any undisputed facts, a subsequent purchaser for value without actual notice could reasonably have relied on the misstatement of the square number as reflected in the indexing of MNB's deed of trust.

The record is ambiguous on whether the MNB Deed of Trust could have been discovered, even by one ignoring the erroneous square number,[7] by searching the grantor/grantee index. Based on the record, the court cannot determine whether MNB's error would prevent a party undertaking a search of the public indexes from discovering the existence of MNB's deed of trust.[8]

*Columbia Gas* contained a property description that provided absolutely no indication that it pertained to the defendant's land. In this way, it is similar to the cases cited by Friedman and addressed in Section C above.

7. A review of the grantor/grantee index would have disclosed a lien granted by Kenneth O. Harris on Lot 62 in Square 452. A searcher looking for a lien granted by Kenneth O. Harris on Lot 62 in Square 1452 might have noticed the similarity and at least have verified that the index was not in error. In this regard, we note that a one digit error in lot numbers might not seem suspicious because it is common for a party to own adjacent lots. A one-digit difference in square numbers, however, might give a careful researcher pause.

8. According to an affidavit of Gregg R. Nesemeier, submitted by MNB, a search of the D.C. Recorder's Office did disclose the deed of trust. However, the affidavit does not state whether this search was based on a publicly available index or if Mr. Nesemeier was able to locate the deed of trust only because he was aware of its existence.

Friedman filed affidavits by Victor E. Marshall and Harold Bardonille, among others. Marshall's affidavit states in relevant part:

Had I searched the grantor/grantee index or the title computer at the Recorder of Deeds to search for liens against such Property I would not have discovered the Deed of Trust as a lien against such Property. The methods employed to search title to particular property at the Recorder of Deeds limit the search of such property to its lot and square index. Neither the grantor/grantee index nor the title computer at the Recorder's Office contains a street address index.

However, Marshall's affidavit does not state that he would not find the record of the deed of trust within the chain of title, only that the index would not disclose it "as a lien against such Property." This could mean only that a searcher would see the reference to the MNB lien, but misled by the square number.

Finally, the affidavit of Harold Bardonille, the D.C. Recorder of Deeds, states that "[s]ince 1984, as a practical matter, the lot and square index has been the primary method of indexing title to property in the District of Columbia." Aff. of Harold Bardonille, ¶ 3. It also states that searches could be made by name, but without great confidence in the results because variations on the name will prevent an instrument from being located. *Id.* at ¶ 4. Finally, Mr. Bardonille states that the grantor/grantee index was updated only monthly starting in 1984, and

Nonetheless, this disputed fact does not prevent summary judgment on the claim that MNB is estopped from claiming its lien is prior to that of subsequent good faith purchasers without notice. Even assuming that a search of the grantor/grantee index would not have put a purchaser on inquiry notice of MNB's lien on the debtor's residence, equitable estoppel is inappropriate.

■ Based on the conclusion in part A above that a party is not legally entitled to rely on the contents of the indexes maintained by the Recorder of Deeds, any reliance on MNB's error could not be considered reasonable. A party cannot claim estoppel if that party has "failed to perform a duty which the law has imposed on him." *Terminal Warehouse & Refrigeration Co. v. Cross Transp. Co., Inc.*, 33 A.2d 617 (D.C.Mun.App. 1943).[9]

This reasoning reinforces the statutory regime outlined in part A, above. The District of Columbia has enacted a recording law that deems a mortgage perfected upon recordation, regardless of indexing. Thus, as shown above, subsequent purchasers were on constructive notice of the contents of MNB's deed of trust. Notwithstanding the error in the square number, and the possible resulting ineffectiveness of the indexes to give inquiry notice of MNB's lien, the deed's contents alone suffice to place subsequent purchasers on constructive (inquiry) notice of MNB's lien. *Cf. Turman v. Bell*, 15 S.W. at 888 (removal of filed deed by owner estops owner from relying on constructive notice of

filing since he enabled grantor to defraud subsequent purchaser).

On other facts, the result might be different. If MNB had deliberately misstated the square number to queer the indexing in order to defraud subsequent parties, a remedy would clearly lie against MNB, which would hold its interest in the property in constructive trust for those so defrauded. *See, In re Auto–Train Corp.*, 53 B.R. 990, 995–96 (D.D.C.1985) ("[a] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it" (citation omitted)). Absent fraud, equity does not protect any subsequent purchaser in this case because enforcing MNB's lien (despite its negligence in misstating the square number) would not be unjust: MNB is entitled to rely on its deed which gave sufficient inquiry notice of its lien on the debtor's residence.

Moreover, if MNB had made independent representations to Friedman that reasonably led Friedman not to search the records, MNB might well be estopped from pleading that Friedman had constructive notice of its lien. However, the only misrepresentation that MNB made was in the deed of trust itself. Yet the court has already found that, notwithstanding MNB's negligent misrepresentation, (1) the deed of trust contained sufficient information to put a party on notice of MNB's lien and (2) the deed of trust was perfected in accordance with D.C. law. To hold that such an error, within the legal

print-outs of that index were discontinued in November, 1989.

**9.** It is true that where separate numerical and grantor/grantee indexes are required to be kept, it has been held that a purchaser has constructive notice of all matters which would be disclosed by an examination of either index. In *Fullerton Lumber Co. v. Tinker*, 118 N.W. 700, 22 S.D. 427 (1908), for example, a purchaser was found to have constructive notice of, and so take subject to, an interest which was referenced in the required numerical index, even though that interest was outside the purchaser's chain of title and so could not have been located through a search of the grantor/grantee index. *See also Crook v. Chilvers*, 99 Neb. 684, 157 N.W. 617 (1916) (abstractor may not rely solely on numerical index, but must also search grantor/grantee

index); *Amoco Production Co. v. United States*, 619 F.2d 1383, 1388 n. 3 (10th Cir.1980) (citing conflicting case law, but noting that "a party who neglects a duty to search a title record should be imputed with notice of anything that would have been discovered upon a proper search"). D.C. does not statutorily require the Recorder of Deeds to maintain either a square and lot index or a grantor/grantee index and hence cases such as *Fullerton Lumber* are distinguishable. But let us assume nevertheless that to the extent such indexes are available, purchasers are obligated to examine both and are on notice of matters that would be disclosed by a proper examination of either. Even assuming that such an obligation existed, this does not establish that the indexes may be relied upon to the exclusion of the deed itself.

record, provides a basis for estoppel would undermine the recording statute.

### E. *MNB Was Not Obligated To Release Its Lien*

■ The outstanding balance on the MNB loan was repaid in full from the Friedman loan, and MNB's claim in this case is for amounts loaned subsequent to that date. Friedman contends that MNB's deed of trust required MNB to release its lien when the debt to MNB was paid in full, and that Friedman was a third party beneficiary of that requirement. Friedman also contends that D.C. Real Property Code § 45–2903(c) caused MNB's lien priority to expire upon the payment of MNB's loan. Neither contention withstands scrutiny.

Section 21 of the deed of trust provides: "Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument without charge to Borrower and mark the Note 'paid' and return the Note to Borrower[.] Borrower shall pay any recordation costs." The sums secured by the deed of trust are specified to be "advances and readvances," it being a revolving line of credit. In this context, it is clear that MNB was not required to release the deed of trust until the line of credit was closed, and it was therefore known that "all sums secured," including future advances, had been repaid.

D.C.Code § 45–2903 is the priority provision governing credit line deeds of trust. It provides priority to the credit line deed of trust "[f]rom the date of [its] recording." Section 45–2903(c) provides, with exceptions not relevant here, that this priority will extend to "all advances made following the recordation of the credit line deed of trust." Nothing in that section supports Friedman's position, unless Friedman had prevailed in asserting that MNB had not properly recorded its lien.

### F. *Friedman Is Not Entitled To Be Equitably Subrogated To MNB's Lien*

■ Friedman also argues that it should be equitably subrogated to MNB's lien, because proceeds of the Friedman loan were used to repay the then-outstanding balance on MNB's loan. While there is little law in the District of Columbia on equitable subrogation in the mortgage context, the Maryland Court of Appeals summarized the doctrine well in *Finance Co. of America v. Heller,* 247 Md. 714, 234 A.2d 611, 612 (1967): "When one pays a debt for which he is not primarily liable in order to protect his interest, the courts generally apply the doctrine of equitable subrogation and allow him to stand in the place of the creditor with the right to enforce whatever security there may be for the payment of the debt" (citations omitted). Moreover, the payor must not be making the payment as a "volunteer," but rather to protect its own interest. *Id.*

Equitable subrogation is not available to Friedman on the facts in this case. First, Friedman affirmatively alleges that it did not know of MNB's lien at the time Friedman made its loan to Harris, and therefore Friedman could not have paid MNB's debt in order to protect its junior lien position. If it had done so, it would certainly have required the release of MNB's lien, and not permitted subsequent advances to be made. Also, the fact that Harris used the proceeds of Friedman's loan to repay MNB cannot be attributed to Friedman. Even if it could be, Friedman would be no more than a volunteer because the repayment of the MNB line of credit was entirely within Harris's discretion.

The cases cited by Friedman are consistent with this ruling. In *In re Allen,* 32 B.R. 93 (Bankr.D.Or.1983), the junior lienor advanced funds to the senior lienor to repay the senior debt. It then obtained a release of that senior lien. The junior lienor was equitably subrogated to the position of the senior lienor as against an intervening tax lien of which the junior lienor had not been aware. In *Allen,* the junior lienor was not a volunteer, because it directly paid the senior lien with the intent of protecting its security interest in the property. *In re Hubbard,* 89 B.R. 920 (Bankr.N.D.Ala.1988), is similar, in that a purchaser of property repaid an existing mortgage as payment for the property, later discovering that a judgment lien had been recorded against the grantor prior to the closing. The purchaser had repaid the prior mortgage to protect its newly acquired

title, not as a volunteer. Neither of these cases support Friedman's position.

Equitable subrogation as applied in the case law does not work to prejudice the senior mortgagee, for whom the junior mortgagee or purchaser is subrogated, because the senior mortgagee is paid in full as a precondition to the subrogation. That is not true in this case, because Friedman is seeking to be subrogated to a lien securing repayment of subsequent advances made by MNB, which have not been repaid.

On these facts, equitable subrogation is not warranted.

### V. *Judgment*

Summary judgment will therefore be granted in favor of Maryland National Bank on the Plaintiff's and Friedman's claims and on MNB's cross-claim, holding that (1) MNB has a perfected deed of trust on the property; (2) MNB's deed of trust has priority over Friedman's deed of trust; and (3) that MNB's deed of trust may not be avoided by the debtor in possession.