In re Kenneth O. HARRIS

v.

MARYLAND NATIONAL BANK, et al.

Kenneth O. HARRIS

v.

MARYLAND NATIONAL BANK, et al.

Civ. A. Nos. 94–0915–LFO, 94–0918–LFO.

United States District Court,
District of Columbia.

June 6, 1995.

Marcia K. Docter, Stephen W. Nichols, Docter & Docter, Washington, DC, for Kenneth O. Harris.

Paul J. Maloney, John A. Taylor, Carr, Goodson & Lee, P.C., Washington, DC, for defendant Maryland Nat. Bank.

David W. Briggs, Colin J. Smith, Stohlman, Beuchert, Egan & Smith, Washington, DC, for Estate of Melvyn Friedman.

## OPINION

OBERDORFER, District Judge.

This matter is before the Court on appeal from a summary judgment entered by the Bankruptcy Court. That decision established the priority of a deed of trust in favor of Maryland National Bank ("MNB") over Kenneth O. Harris, the debtor in possession ("Harris"), and the estate of Melvin Friedman, holder of a subsequently filed deed of trust ("Friedman"), even though the MNB deed of trust misidentified the square number of the subject property such that it was not correctly indexed in the lot and square index by the Recorder of Deeds.

### I.

The Bankruptcy Court correctly found as undisputed facts the following: On December 16, 1988, Harris executed a second lien deed of trust on his residence to secure an MNB line of credit of approximately $68,500. The deed of trust prepared by MNB correctly identified the property which secured the loan by its street address and by reference to

the deed which put title in debtor/grantor Harris. A critical fact here is, however, that the deed of trust on its face described the property as being in "square 452" although its correct location is "square 1452."

Thereafter, on December 23, 1988, MNB delivered to the Recorder of Deeds the deed of trust bearing the erroneous square number, which was then stamped with the notation that MNB paid a fee of $6.00 to the Recorder, presumably for "filing and indexing."[1] The Recorder, in turn, indexed the document under the name of debtor/grantor Harris in the grantor/grantee index maintained by the Recorder. However, there is a space in the grantor/grantee index for the recording of the lot and square number. In this case the Recorder had dutifully entered in the space square "452" when the property, as stated, is located in square "1452." The Recorder's office also maintains a lot and square index. Guided by the error committed by MNB, the Recorder listed the MNB deed of trust in the lot and square index for square 452. As a result, a search limited to the lot and square index would not disclose or lead directly to the MNB deed of trust.

In July 1989, debtor/grantor Harris borrowed $175,000 from Melvin Friedman and secured that loan by another deed of trust. Neither Friedman nor the title searcher searching on Friedman's behalf discovered the MNB lien. However, Harris applied approximately $68,000 from the proceeds of the Friedman loan to repay the then outstanding balance of the MNB line of credit. The record is silent as to what knowledge, if any, Friedman had of this application of the proceeds of the loan he made to Harris. Thereafter, debtor/grantor Harris drew down a further portion of the MNB line of credit secured by the erroneously indexed deed of trust. Despite, or because of, these infusions of credit, on February 26, 1990, Harris petitioned for protection under Chapter 11 of the Bankruptcy Code and was continued in possession. In July 1990, MNB filed a proof of what it alleged was a secured claim in the amount of $84,817.58, the advances made

from the line of credit to Harris after the earlier repayment funded by Friedman's loan, plus interest.

In addition to the foregoing generally undisputed facts, the parties confronted the Bankruptcy Court with "countervailing affidavits" as to whether a search that does not include the grantor/grantee (as distinguished from the lot and square) index is a reasonable one. For example, Harold Bardonille, Recorder of Deeds for the District of Columbia, averred that "since 1984, as a practical matter the lot and square index has been the primary method of identifying title to property in the District of Columbia." April 1991 Affidavit of Harold Bardonille, Att. to Friedman Motion for Summary Judgment. The Recorder further averred that he "no longer maintains a grantor/grantee index as such. . . . [P]rintouts were not maintained on a current basis, but were updated from month to month ... [and] discontinued in November 1989." *Id.* However, the Bankruptcy Court determined that the factual dispute there framed was not material because the question of "whether or not misindexing defeats constructive notice of MNB's deed of trust is a question of law which can be answered from the controlling statute on recordation." *Harris v. Maryland Nat'l Bank,* 165 B.R. 729, 732 (Bankr.D.C.1994).

The Bankruptcy Court found the controlling law in the plain language of Sections 45–701 and 45–801 of the D.C. Real Property Code. *Id.* Section 45–701 provides that a deed of trust shall take effect, as to third parties, "in the same manner and under the same conditions as absolute deeds." D.C.Code Ann. § 9–45–701. Section 45–801, governing deeds absolute, provides that such a deed takes effect as to a subsequent bona fide purchaser or mortgagee "from the time of its delivery to the Recorder of Deeds for record." D.C.Code Ann. § 9–45–801; *see Harris,* 165 B.R. at 731. The Bankruptcy Court focused on the fact that § 45–801 does not on its face require indexing in order to be effective as to third parties. *Id.* While

---

1. *See* Deed of Trust attached as Exhibit 1 to Harris's Memorandum in Support of Motion for Summary Judgment. The filing fee payment was not relevant to the legal issues resolved by the Bankruptcy Court (*see* pp. 658–59, *infra*), and he understandably made no finding that it was paid.

recognizing that "there appears to be no controlling precedent in the District of Columbia," the Bankruptcy Court concluded that: (i) the erroneous property description did not prevent perfection of MNB's lien (*id.* at 732–33); and (ii) MNB's role in the misindexing did not estop it from pleading perfection of its lien. *Id.* at 736.

## II.

On August 29, 1990, Harris, as debtor in possession, initiated this litigation against MNB in the ongoing bankruptcy proceedings by filing a complaint seeking to void the misindexed MNB lien. Pursuant to an order of the Bankruptcy Court, on January 15, 1991, Harris amended the complaint to add the Estate of Melvin Friedman as a defendant, and on January 22, 1991, MNB filed a cross claim against Friedman. On March 22, 1994, the Bankruptcy Court granted a motion for summary judgment filed in the interim by MNB. The Court ruled as a matter of law that MNB's delivery of the deed to the Recorder effected "constructive notice to subsequent purchasers or lienors of all matters which would be disclosed by examination of the deed of trust," (165 B.R. at 732), and that indexing was not required in order to make the deed so delivered effective as to third parties. *Id.* Since, according to the Bankruptcy Court, indexing is not required as a matter of law, "a party is not legally entitled to rely on the contents of the indices maintained by the Recorder of Deeds." *Id.* at 736. By the same token, the Bankruptcy Court ruled, even though the misindexing was a direct result of MNB's erroneous designation of the square, and not due to any error by the Recorder or the debtor, MNB was not equitably estopped from asserting it in preference to that of Friedman; Friedman simply was not, as a matter of law, entitled to rely on the lot and square index. *Id.* The Bankruptcy Court found that the same consideration defeated the contention of Harris as debtor in possession that, as such, he should be treated as a purchaser innocent of the knowledge of the MNB lien. *Id.*

## III.

█ The Bankruptcy Court's thorough and well-reasoned opinion undertakes to resolve for the District of Columbia the original question of whether delivery of a deed of trust to the Recorder of Deeds perfects it, irrespective of whether it is correctly indexed or indexed at all. I am not persuaded that it is necessary to reach and resolve this interesting and commercially important local law issue in this federal forum in order to decide this case. It may be that an imperfectly indexed deed nevertheless effects constructive notice to the world, at least where the Recorder or his staff is responsible for the misindexing. However, it is noteworthy, in passing, that Section 45–909(7) authorizes the Recorder to charge $2 for "filing *and indexing* . . . a deed of trust." D.C.Code Ann. § 9–45–909(7) (emphasis added).[2] As the Bankruptcy Court emphasized, no statute specifically and directly requires the Recorder to index the documents which he files and records, or to do so accurately. However, arguably, once the Recorder accepts the fee for filing and indexing, he has a contract, indeed, a public fiduciary, duty to index correctly that which he has filed and recorded. The consequences of his error can be disastrous to significant public and business interests. An innocent prospective purchaser or lender seeking information as to the status of a recorded document might nevertheless be chargeable with notice of a misindexed deed with respect to which a fee was paid to the Recorder for filing and indexing. In that event, the lender or purchaser misled to his detriment by the Recorder's misindexing may have a remedy against the Recorder responsible for the misindexing, rather than against the equally innocent lender or purchaser who delivered the document in correct form to the Recorder.

█ However, in this case it is only necessary to reach the narrower issue of whether a party in interest, such as the holder of a lien (as distinguished from the Recorder), whose negligence caused misindexing is estopped from asserting a priority against another party who acted to his detriment in reliance on the misindexing. On the facts

---

**2.** *See* p. 658, *supra.*

here, this narrowing of the legal issue does not resolve the controversy, but rather requires a return of the case to the Bankruptcy Court for resolution, as a trier of fact, of the factual dispute as to whether a reasonable secondary lender would have searched beyond the lot and square index and thereby discovered the MNB deed of trust. Thus, to draw on a tort law analogy, there remains to the resolved by the trier of fact as an issue of fact, whether MNB negligently caused the misindexing and, if so, whether Friedman's actions were, nevertheless, contributorily negligent—i.e., whether a reasonable person would or should have searched beyond the lot and square index and thereby, or otherwise, discovered the misindexed document. Also, the fact that Harris applied the proceeds of the Friedman loan to his debt to MNB requires a determination by the Bankruptcy Court as to whether Friedman had such actual knowledge (as distinguished from constructive knowledge) of the MNB lien as to relieve MNB of responsibility for its negligence.

Accordingly, an accompanying Order will reverse the decision of the Bankruptcy Court and remand this case for further proceedings consistent with this opinion.