64 F.3d 656
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
FIDELITY NATIONAL TITLE INSURANCE COMPANY OF PENNSYLVANIA,
Plaintiff-Appellant,
v.
CHICAGO TITLE INSURANCE COMPANY, Defendant-Appellee.
 No. 94-2308.
 
 Fourth Circuit.
 Argued April 4, 1995.
Decided Aug. 14, 1995.
 ARGUED: Lauri Elizabeth Cleary, LERCH, EARLY & BREWER, Bethesda, MD, for Appellant. C. Lamar Garren, PIPER & MARBURY, Baltimore, MD, for Appellee. ON BRIEF: R. Dennis Osterman, LERCH, EARLY & BREWER, Bethesda, MD, for Appellant. Anthony L. Meagher, PIPER & MARBURY, Baltimore, MD; Thomas A. Doyle, William M. Sneed, BAKER & McKENZIE, Chicago, IL; Susan E. Woods, CHICAGO TITLE INSURANCE COMPANY, Chicago, IL, for Appellee.
 Before WILKINS and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal arises out of a suit by Fidelity National Title Insurance Company against Chicago Title Insurance Company. Fidelity and Chicago Title both employed Central Maryland Title Company as an agent to sell title insurance policies. Fidelity now seeks to hold Chicago Title liable for Central Maryland's misappropriations of escrow funds from a commingled escrow account. Fidelity's complaint asserts four claims (contained in three counts) against Chicago Title: (1) conversion, (2) breach of fiduciary duty, (3) unjust enrichment, and (4) civil conspiracy. The district court dismissed all four claims for failure to state a claim upon which relief could be granted under Maryland law. We now affirm the dismissal of the claims for conversion and unjust enrichment and reverse the dismissal of the claims for breach of fiduciary duty and civil conspiracy.
 
 I.
 
 2
 Beginning in approximately January 1990, Chicago Title contracted with Central Maryland to sell title insurance policies to owners of real property and their lenders. Central Maryland also functioned as an escrow agent, holding escrow deposits for parties to real estate transactions insured by Chicago Title. Central Maryland commingled all of the escrow deposits into a single fund.
 
 
 3
 Between 1990 and 1993 Central Maryland embezzled more than half a million dollars from the commingled escrow fund. Beginning in 1990, Chicago Title conducted periodic audits of Central Maryland's escrow accounts and determined that these accounts were short of funds. Chicago Title determined that Central Maryland was paying earlier closing obligations with current settlement funds.
 
 
 4
 In March 1993 Fidelity began to use Central Maryland as a title agent. Central Maryland handled escrow funds on behalf of Fidelity's insureds, commingling them with those of Chicago Title's insureds. Central Maryland used the escrow funds it received from Fidelity's insureds to pay preexisting obligations to Chicago Title's insureds. In July 1993 Chicago Title terminated its agency relationship with Central Maryland. However, until November 1993 Central Maryland continued to discharge its existing obligations towards Chicago Title's insureds.
 
 
 5
 In March 1994 Fidelity learned that the Maryland Attorney Grievance Commission had investigated Central Maryland's alleged mishandling of escrow funds. Fidelity began its own audit and soon discovered a shortage in excess of $500,000. The bulk of this shortage had occurred during a time when Chicago Title was Central Maryland's sole principal. Fidelity had provided its insureds with "closing protection" that insured against Central Maryland's failure to fulfill its escrow functions. Therefore, Fidelity was obligated to reimburse its insureds for Central Maryland's misappropriation, which totalled $676,828.
 
 
 6
 Fidelity sued Chicago Title, alleging (1) conversion, (2) breach of fiduciary duty, (3) unjust enrichment, and (4) civil conspiracy. Chicago Title moved for dismissal or in the alternative for summary judgment. Finding that all of Fidelity's claims failed as a matter of law, the district court dismissed Fidelity's complaint for failure to state a claim.
 
 II.
 
 7
 We review a dismissal under Fed.R.Civ.P. 12(b)(6) de novo. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993). Dismissal for failure to state a claim is appropriate only if the plaintiff can prove no set of facts that would entitle it to relief. Id. We address each claim in turn.
 
 A.
 
 8
 Fidelity's claims involve losses to its insureds which it was obligated to reimburse. Therefore, as a threshold matter, Fidelity claims that it is entitled to subrogation of its insureds' claims and therefore may sue in place of its insureds.
 
 
 9
 Subrogation may be available to a party (the subrogee) that pays a debt for which it is not primarily liable. The doctrine allows the subrogee to stand in the place of the creditor to seek payment from the debtor. Finance Co. of Am. v. Heller, 234 A.2d 611, 612 (Md.1967). Subrogation requires (1) the existence of a debt or obligation for which a party other than the subrogee is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights and interests. Lawyers Title Ins. Co. v. Edmar Constr. Co., 294 A.2d 865, 869 (D.C.App.1972) (applying Maryland law). The subrogee must be entitled to subrogation "on equitable principles." Heller, 234 A.2d at 612.
 
 
 10
 Fidelity's complaint alleges that Central Maryland deliberately misappropriated the escrow funds involved in transactions insured by Fidelity to make up for shortages caused by its prior defalcations. The complaint asserts that Chicago Title either tacitly encouraged or expressly directed the misappropriations. Finally, the complaint alleges that Fidelity was under an obligation to reimburse its insureds for Central Maryland's failure to fulfill its escrow obligations. In sum, the complaint alleges that Chicago Title is primarily liable for the obligations for which Fidelity was bound to reimburse its insureds. For the purpose of a motion to dismiss under Rule 12(b)(6), these allegations are sufficient to show that Fidelity is subrogated to the claims of its insureds.
 
 B.
 
 11
 Fidelity's first count alleges that Chicago Title, through its agent, Central Maryland, converted Fidelity's insureds' escrow deposits to pay off obligations to Chicago Title's insureds. Under Maryland law, an action for conversion "is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money entrusted to his care." Lawson v. Commonwealth Land Title Ins. Co., 518 A.2d 174, 177 (Md.Ct.Spec.App.1986). Therefore, money may be converted only when it is associated with some specific document (e.g., a promissory note, a check, or currency), id., or is in a specific account belonging to the plaintiff, Food Fair Stores, Inc. v. Greeley, 285 A.2d 632 (Md.1972). Accordingly, an action for conversion is not maintainable for funds in a commingled account, and the district court correctly dismissed this claim.
 
 C.
 
 12
 Fidelity's second count asserts claims for breach of fiduciary duty and for unjust enrichment. We treat each separately. Fidelity appears to assert that Chicago Title is liable for breach of fiduciary duty under two different theories. On appeal Fidelity argues that Chicago Title directly owed a fiduciary duty to Fidelity's insureds by virtue of its status as a "co-trustee" of the commingled escrow fund. Fidelity bases this conclusion entirely upon TRW Title Ins. Co. v. Security Union Title Ins. Co., 1994 WL 194262 (N.D.Ill.1994), an unpublished district court opinion finding such a duty under Illinois law on similar facts.
 
 
 13
 Under Maryland law, Chicago Title did not enter into a fiduciary relationship with Fidelity's insureds simply because Fidelity also used Central Maryland as a title insurance agent. Assuming that Chicago Title acted as an escrow agent (through its agent, Central Maryland) on behalf of its own insureds, it became a fiduciary to the parties to its insureds ' transactions. Donovan v. Kirchner, 641 A.2d 961, 969 (Md.Ct.Spec.App.1993), cert. denied, 648 A.2d 202 (Md.1994). However, it undertook no obligations whatever regarding the customers of Fidelity, a competitor. See United States ex rel. Allied Bldg. Prods. Corp. v. Federal Ins. Co., 729 F.Supp. 477, 478 (D.Md.1990) (under Maryland law, no fiduciary duty between parties that do not stand in a confidential relationship to one another).
 
 
 14
 However, in its complaint Fidelity states its claim differently, maintaining that Chicago Title is vicariously liable for Central Maryland's breach of fiduciary duty. In Maryland, a principal is vicariously liable for the actions of its agent if they are within the scope of the agent's actual or apparent authority. Progressive Casualty Ins. Co. v. Ehrhardt, 518 A.2d 151 (Md.Ct.Spec.App.1986). Fidelity alleges that Central Maryland's handling of the escrow accounts was within the scope of its agency relationship with Chicago Title.[1]
 
 
 15
 In dismissing this claim, the district court simply maintained that Chicago Title was not vicariously liable for the actions of its agent. We assume this is because it found that Central Maryland's action was not within the scope of its authority.[2] However, Fidelity has pleaded that Central Maryland's actions with regard to the escrow accounts were within the scope of its agency agreement with Chicago Title. We may dismiss under Rule 12(b)(6) only if Fidelity can prove no set of facts that would entitle it to relief, and therefore we may not address the factual issue of the scope of the agency. We therefore reverse the dismissal of this claim.
 
 D.
 
 16
 Fidelity also claims in Count Two that Chicago Title was unjustly enriched by Central Maryland's payment of escrow obligations to Chicago's insureds using funds deposited by Fidelity's insureds. We will assume (although Fidelity does not specifically allege it) that Chicago Title, like Fidelity, would have been obligated to reimburse its insureds had Central Maryland failed to fulfill its escrow obligations. Thus, because of Central Maryland's actions, Chicago Title avoided a $676,828 loss.
 
 
 17
 A person is unjustly enriched when he "non-tortiously and without notice that another has the beneficial ownership of it, acquires property which it would have been wrongful for him to acquire with notice of the facts and of which he is not a purchaser for value." Plitt v. Greenberg, 219 A.2d 237, 241 (Md.1966). Thus, unjust enrichment is an equitable substitute for tort when the defendant's lack of notice is all that keeps his conduct from being tortious. It exists only when "the defendant holds plaintiff's money and it would be unconscionable for him to retain it." Id. at 241.
 
 
 18
 Fidelity's claim fails for several reasons. First, Fidelity alleges no underlying tort for which Chicago Title would have been liable but for its lack of notice. Fidelity maintains throughout its complaint, and Chicago Title does not appear to dispute it, that Chicago Title was aware of Central Maryland's actions.
 
 
 19
 Furthermore, Chicago Title's only alleged benefit was the closing of its insureds' transactions. Even assuming this constitutes "enrichment," it is only "unjust" if the benefits to Chicago Title's insureds were unjust. However, Central Maryland's fulfillment of its escrow obligations to Chicago Title's insureds was merely the payment of pre-existing debts. Because they received payments in satisfaction of a debt, Chicago Title's insureds gave "value" for the money and therefore were not themselves unjustly enriched.
 
 
 20
 Finally, we do not believe it would be "unconscionable" for Chicago Title not to be required to reimburse Fidelity for Central Maryland's alleged misappropriations. Fidelity, to the same extent as Chicago Title, had the ability to control Central Maryland and investigate the administration of the escrow fund. It could have investigated the status of the fund before taking Central Maryland on as its agent or required that Central Maryland keep the escrow funds of Fidelity's insureds in a separate account. Fidelity failed to take any of these precautions. Under these circumstances, Fidelity's loss was not unconscionable. TRW, 1994 WL 194262 at * 4.
 
 E.
 
 21
 Finally, Fidelity's complaint (Count Three) alleges that Chicago Title and Central Maryland conspired to misappropriate funds from Fidelity-insured settlements. Under Maryland law, a civil conspiracy occurs when two or more persons agree to accomplish a wrongful act, and the acts of the conspirators result in damage to the plaintiff.
 
 
 22
 Markey v. Wolf, 607 A.2d 82, 99-100 (Md.Ct.Spec.App.1992). The underlying unlawful act must be an actionable wrong. Columbia Real Estate Title Ins. Co. v. Caruso, 384 A.2d 468, 472-73 (Md.Ct.Spec.App.1978).
 
 
 23
 Chicago Title argues first that it may not be held liable for conspiracy because it did not itself commit an unlawful act in furtherance of the conspiracy. Maryland law, however, does not require that every conspirator individually commit an unlawful act. A participant in the conspiracy may be held civilly liable as long as some act was performed in furtherance of the conspiracy, even if performed by another participant. Alleco, Inc. v. Weinberg Found., Inc., 639 A.2d 173, 179 (Md.Ct.Spec.App.1994), cert. granted, 647 A.2d 453 (Md.1994). Fidelity has alleged that Chicago Title conspired with Central Maryland to breach Central Maryland's fiduciary duties to Fidelity's insureds. A breach of fiduciary duty may serve as the basis for a civil conspiracy. Id. Thus, Fidelity's complaint sufficiently states a claim for civil conspiracy.
 
 
 24
 Chicago Title also notes the rule that no conspiracy may exist between a principal and its agent when the agent acts within the scope of its employment. Fraidin v. Wietzman, 611 A.2d 1046, 1079 (Md.Ct.Spec.App.1992), cert. denied, 617 A.2d 1055 (Md.1993). The district court relied on this rule to dismiss Fidelity's conspiracy claim. To be sure, Fidelity alleged in its complaint that Central Maryland's escrow activities were within the scope of its agency relationship with Chicago Title. However, Chicago Title vehemently disputes this allegation, and hence the scope of the agency relationship between Chicago Title and Central Maryland is at this stage a factual issue that should be addressed on a motion for summary judgment or at trial. The dismissal of Fidelity's conspiracy claim was therefore premature, and we accordingly reverse it.
 
 III.
 
 25
 To summarize, Fidelity's claims for breach of fiduciary duty and civil conspiracy both hinge on the scope of Central Maryland's agency relationship with Chicago Title, a factual issue. If Central Maryland's escrow activities were within the scope of its agency, Fidelity's claim that Chicago Title is vicariously liable for Central Maryland's breach of fiduciary duty may survive. If not, Fidelity's civil conspiracy claim may survive. While it appears that one of these claims must fail once the scope of the agency relationship is determined, dismissal of both under Rule 12(b)(6) was premature. We think that the scope of the agency relationship should be sorted out first in the district court. Accordingly, we affirm the dismissal of Fidelity's claims for conversion and unjust enrichment, reverse dismissal of Fidelity's claims for breach of fiduciary duty and civil conspiracy, and remand for additional proceedings consistent with this opinion.[3]
 
 
 26
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 [1]
 Technically, Maryland courts have not established whether a breach of fiduciary duty is a tort. Adams v. Coates, 626 A.2d 36, 41 (Md.1993). However, it is considered to be a tort under general common law. Restatement (Second) of Torts Sec. 874. And, most courts permit claims of vicarious liability for an agent's breach of fiduciary duty. See e.g., Davis v. Mutual Life Ins. Co., 6 F.3d 367 (6th Cir.1993) (Ohio law), cert. denied, 114 S.Ct. 1298 (1994); Kral, Inc. v. Southwestern Life Ins. Co., 999 F.2d 101 (5th Cir.1993) (federal law)
 
 
 [2]
 As we discuss below, the district court reached the opposite conclusion when dismissing the conspiracy claim, so its conclusory statement that no vicarious liability exists is not readily explicable
 
 
 [3]
 Because the district court treated Chicago Title's motion as a motion to dismiss, we have reviewed the court's rulings under the standards governing Rule 12(b)(6) dismissal. Accordingly, we express no opinion as to how Fidelity's remanded claims might fare under summary judgment analysis or at a trial on the merits